```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     -------------------------------x
3    UNITED STATES OF AMERICA,      :      15-CR-393 (MKB)
                                    :
4            Plaintiff,             :      United States Courthouse
                                    :      Brooklyn, New York
5            -against-              :
                                    :      February 9, 2017
6    FAREED MUMUNI,                 :      2:00 p.m.
                                    :
7            Defendant.             :
     -------------------------------x
8
                 TRANSCRIPT OF CRIMINAL CAUSE FOR PLEA
9             BEFORE THE HONORABLE MARGO K. BRODIE
                   UNITED STATES DISTRICT JUDGE
10
     APPEARANCES
11
     For the Plaintiff:      ROBERT L. CAPERS
12                           UNITED STATES ATTORNEY
                                271 Cadman Plaza East
13                              Brooklyn, New York 11201

14                           BY:  DOUGLAS PRAVDA,
                                  Assistant United States Attorney
15                                ALEXANDER A. SOLOMON,
                                  Assistant United States Attorney
16                                IAN C. RICHARDSON,
                                  Assistant United States Attorney
17
     For the Defendant:      ANTHONY L. RICCO, ESQ.
18                           STEVEN Z. LEGON, ESQ.
                                20 Vesey Street – Suite 400
19                              New York, New York 10007

20                           KENNETH J. MONTGOMERY, ESQ.
                                198 Rogers Ave
21                              Brooklyn, New York 11225

22   Court Reporter:         LINDA A. MARINO, RPR
                             225 Cadman Plaza East
23                           Brooklyn, NY 10021
                             (718) 613-2484
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

1    THE COURTROOM DEPUTY:  Criminal cause for a plea

2   hearing, Docket 15-CR-393, United States v. Fareed Mumuni.

3   Will the parties please state their appearances for the

4   record?

5    MR. SOLOMON:  Good afternoon, your Honor.

6   Alex-Solomon, Doug Pravda, and Ian Richardson for the

7   Government.

8    THE COURTROOM DEPUTY:  Good afternoon, counsel.

9    MR. RICCO:  Good afternoon, your Honor.  Anthony

10  Ricco for Fareed Mumuni, and I'm joined by Attorney Steven

11  Legon and Ken Montgomery.

12    THE COURT:  Good afternoon, counselor.  And good

13  afternoon, Mr. Mumuni.

14    And Mr. Ricco, I understand that your client wishes

15  to plead guilty to the five counts of the indictment with

16  which he is charged.

17    MR. RICCO:  Yes, he does, your Honor.

18    THE COURT:  And those counts, so that it's clear for

19  the record, are conspiracy to provide material support to

20  foreign terrorist organization, the Islamic State of Iraq and

21  Levant, which I'll refer to as "ISIL" throughout, that's Count

22  One; Count Two, attempt to do the same; Count Three,

23  conspiracy to assault federal officers; Count Five, attempt to

24  murder federal officers; and Count Six, assault of a federal

25  officer.

1          MR. RICCO:  Yes, your Honor.

2          THE COURT:  Mr. Mumuni, your attorney has advised me

3    that you wish to plead guilty to all five counts of the

4    indictment in which you are charged.

5          THE DEFENDANT:  Yes.

6          THE COURT:  This is a serious decision, and I must

7    be certain that you make it understanding the rights and

8    consequences of your plea.  I'm going to explain certain

9    rights to you, but before I do that and before I accept your

10   plea, there are a number of questions that I must ask you to

11   ensure that it is a valid plea to all five counts.

12          If at any time you do not understand any of my

13   questions, let me know, I will rephrase them.  If at any time

14   you need to consult with any of your three lawyers, let me

15   know, and I will give you an opportunity to consult with them.

16   Is that clear, Mr. Mumuni?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Before I begin, because I need your

19   answers to my questions to be under oath, I am going to have

20   the clerk swear you in.

21          (Defendant sworn.)

22          THE COURT:  What is your full name?

23          THE DEFENDANT:  Fareed Abib Mumuni.

24          THE COURT:  Hold old are you?

25          THE DEFENDANT:  22.

1          THE COURT:  How far did you get in school?

2          THE DEFENDANT:  Second semester of college.

3          THE COURT:  And are you able to speak and understand

4    English?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Mr. Ricco, I'll address all questions to

7    you, as lead counsel.  Have you been able to communicate with

8    your client in English?

9          MR. RICCO:  Yes, your Honor.

10         THE COURT:  Mr. Mumuni, have you ever been treated

11   or hospitalized for any mental illness?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  Are you currently or have you recently

14   been under the care of a doctor or psychiatrist for any

15   reason?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Have you been treated or hospitalized

18   for any type of addiction, including drug or alcohol

19   addiction?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  Have you taken any drugs, medicine,

22   pills, or had any alcoholic beverages in the last two days?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Is your mind clear as you sit here

25   today?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  And do you understand what is happening

3 today?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Counsel, have you discussed the matter

6 of pleading guilty with your client?

7           MR. RICCO:  Yes, we have, your Honor.

8           THE COURT:  Does he understand the rights he would

9 be waiving by pleading guilty?

10          MR. RICCO:  He does, your Honor.

11          THE COURT:  Is he capable understanding the nature

12 of these proceedings?

13          MR. RICCO:  I'm satisfied that he does, your Honor.

14          THE COURT:  And do you have any doubt as to his

15 competence to plead guilty today?

16          MR. RICCO:  None whatsoever.

17          THE COURT:  Have you advised him of the maximum and

18 minimum sentence he faces on each count?

19          MR. RICCO:  Yes, your Honor.

20          THE COURT:  Have you advised him that the sentence

21 on the counts could run consecutively to each count?

22          MR. RICCO:  Yes, we have, your Honor.

23          THE COURT:  Have you discussed with him the effect

24 of the sentencing guidelines?

25          MR. RICCO:  Yes, we have your Honor, on several

1  occasions.

2          THE COURT:  Mr. Mumuni, have you reviewed a copy of

3  the indictment, which includes all of the charges against you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Have you fully discussed the charges and

6  your case in general with your counsel?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  I'm going to explain the charges to you

9  because I want to make sure that you understand them.  I'm

10  going to briefly tell you what the elements are of each of the

11  counts.

12          As to Count One, conspiracy to provide material

13  support to a foreign terrorist organization, the Government

14  would have to prove if you were to go to trial that you

15  entered into an unlawful agreement with at least one other

16  person; that you did so to provide support or resources to

17  ISIL; that you knew that ISIL was, in fact, a foreign

18  terrorist organization or that ISIL had engaged or was

19  engaging in terrorist activity or terrorism; and that you

20  knowingly and intentionally became a member of that

21  conspiracy.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  As to Count Two, the charge of attempt

25  to provide material support to a foreign terrorist

1    organization, the Government would have to prove that you

2    intended to commit the crime of providing material support or

3    resources to ISIL; that you knew that ISIL was a designated

4    terrorist organization or that it had engaged or was engaging

5    in terrorist activity or terrorism; and that you did some act

6    that was a substantial step in an effort to bring about or

7    accomplish a crime.

8              Do you understand that as to Count Two?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  As to Count Three, conspiracy to assault

11   federal officers, the Government would have had to prove that

12   you entered into an unlawful agreement to assault a federal

13   officer, which person -- the federal officer -- was engaged in

14   or on account of performance of his or her official duties;

15   that you conspired to do so with the use of a dangerous

16   weapon, it could be dangerous or deadly weapon; and that you

17   knowingly and willingly became a member of the conspiracy; and

18   that at least one member of the conspiracy knowingly committed

19   at least one of the overt acts that are charged in the

20   indictment.

21             Does he have a copy of the indictment in front of

22   him, counsel?

23             MR. RICCO:  A summary of it, your Honor, yes.

24             THE COURT:  I'm going to list for you the three

25   overt acts that are charged in the indictment.

1          Overt Act One, on or about June 2, 2015, Saleh and

2     Mumuni exchanged electronic communications in which they

3     discussed attacking members of law enforcement; number two, on

4     or about June 13, 2015, Saleh attempted to attack a law

5     enforcement officer by charging at a law enforcement officer

6     with a knife in his hand; and Overt Act No. 3, on or about

7     June 17, 2015, Mumuni attempted to attack a law enforcement

8     officer by charging at a law enforcement officer with a knife

9     in his hand and stabbing him repeatedly.  One of those acts

10    would have to be proved.  And lastly, the act must have been

11    committed to further some objective of the conspiracy.  So,

12    those are the elements of Count Three.

13          As to Count Five, attempted murder of federal

14    officer, the Government would have to prove that you

15    unlawfully attempted to kill the victim; that you did so with

16    malice aforethought, which basically means bad intent,

17    conscious intent; that the victim was a federal officer on the

18    day you attempted to murder him, which was June 17, 2015; and

19    that he was engaged in the performance of his official duties

20    at the time.

21          Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And did you understand the elements for

24    Count Three also?

25          THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  As to Count Six, assault of a federal

2   officer, the proof that the Government would have to present

3   would have to show that the victim was a federal officer on

4   June 17, 2015; that you forcibly assaulted or resisted or

5   opposed or impeded or intimidated or interfered with the

6   victim; that this forcible action involved the intent to

7   commit a subsequent felony; that the victim was engaged in the

8   performance of his judicial duties or was assaulted on account

9   of his official duties; and that you acting willfully and that

10  you used a deadly or a dangerous weapon to commit such acts.

11       Do you understand those elements?

12       THE DEFENDANT:  Yes, your Honor.

13       THE COURT:  These are the charges that you wish to

14  plead guilty to.  Do you understand them?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  Have you had sufficient time to discuss

17  with your attorneys whether or not to plead guilty?

18       THE DEFENDANT:  Yes, your Honor.

19       THE COURT:  Are you fully satisfied with the

20  counsel, representation, and advice given to you in this case

21  by your attorneys?

22       THE DEFENDANT:  Yes, your Honor.

23       THE COURT:  I'm now going to explain certain rights

24  to you.  These are rights that you have that you will be

25  giving up if, in fact, you plead guilty to these charges.  I

1   need you to listen carefully to what I'm about to say.  And,

2   again, if you don't understand anything, let me know.

3           You have the right to continue to plead not guilty.

4   No one can be forced to plead guilty.  Do you understand that?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  You have a right under the Constitution

7   and laws of the United States to a speedy and public trial by

8   a jury; do you understand that?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  At trial, you would be presumed to be

11  innocent and the Government would have to prove you guilty

12  beyond a reasonable doubt; do you understand that.

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  You would have the right to the

15  assistance of counsel for your defense.  Mr. Ricco,

16  Mr. Montgomery, and Mr. Legon have all been appointed to

17  represent you, and they would continue to represent you

18  throughout the trial and any subsequent proceeding.

19          Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  You would have the right to see and hear

22  all witesses and have them cross-examined in your defense; do

23  you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  You would have the right on your part to

decline to testify unless you voluntarily elected to do so in your own defense; do you understand?

 THE DEFENDANT:  Yes, your Honor.

 THE COURT:  You would have the right to the compel the attendance of witnesses to testify in your defense; do you understand?

 THE DEFENDANT:  Yes, your Honor.

 THE COURT:  Should you decide not to testify or put on any evidence, those facts could not be used against you at trial; do you understand?

 THE DEFENDANT:  Yes, your Honor.

 THE COURT:  By entering a plea of guilty and if I accept that plea, there will be no trial and you would have given up your right, waived it, given it up, your right to trial as well as all of those rights that I just discussed with you; do you understand is that?

 THE DEFENDANT:  Yes, your Honor.

 THE COURT:  There will be no further trial of any kind, no right to appeal from the judgment of guilty.  I would simply enter a judgment of guilty on the basis of your guilty plea.  Do you understand that?

 THE DEFENDANT:  Yes, your Honor.

 THE COURT:  If you plead guilty, I still have to ask you questions and satisfy myself that you are guilty of each of these crimes.  That means that you will be giving up your

right against self-incrimination.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you willing to give up your right to trial and all of those rights that I just mentioned to you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you plead guilty and you're not a U.S. citizen it may affect your residency or your status with immigration authorities?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Counsel, were all formal plea offers from the Government communicated to Mr. Mumuni?

MR. RICCO:  Yes, they were, your Honor.

THE COURT:  Mr. Mumuni, I must be certain that you understand the consequences of pleading guilty to these five crimes.  I've already explained the elements of the crimes to you.  Now I'm going to review the consequences of your plea with you.

As to Count One, conspiracy to provide material support, you face a maximum term of imprisonment of 20 years; do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You face no mandatory minimum term.  You do, however, face a maximum supervised release term of life; do you understand that?

THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  "Supervised release term" means you'll

2    be subject to supervision by the probation department when and

3    if you're released from custody.  If you violate any of the

4    rules that are imposed on you, you can be sent back to prison

5    without credit for any time that you've previously served.

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Counsel for the Government, you indicate

9    in your penalty sheet that he can serve up to 20 years of

10   additional time if he violates supervised release.

11         MR. SOLOMON:  That's correct.

12         THE COURT:  Can you tell me what provision of the

13   statute you're relying on for that?

14         I looked at 18 U.S.C. 2339B, which ultimately

15   referred me back to 18 U.S.C. 2332B(5), which, under that

16   definition, explained the 20 years and the life for maximum

17   supervised release, but I don't see anything in the statute

18   speaking specifically to serving an additional time of up to

19   20 years.

20         MR. SOLOMON:  One moment, please, your Honor.

21         (Pause in proceedings.)

22         MR. SOLOMON:  Mr. Pravda will address this point.

23         MR. PRAVDA:  Your Honor, Under 18 U.S.C. 3583J, we

24   understand that supervised release term for a terrorism crime

25   is up to life.  It is our understanding that some authorities

have taken the position that he cannot be sentenced beyond the

statutory maximum without raising due process concerns.  So,

the 20 years come from the statutory maximum for the

underlying crime.

THE COURT:  As the maximum.  But how do you get to

if he violates supervised release that I can send him back to

jail for up to the maximum time of the crime?

MR. PRAVDA:  I think it's at (j) is intended

entirely to replace the provision in 3583(e)(3)

THE COURT:  Slow down so the court reporter can keep

up with you.

MR. PRAVDA:  Subsection 3853(j) is intended to

replace entirely the provision in Section 3583(e)(3) that

includes the limitation on what term he could be sentenced to

for each individual violation.

THE COURT:  Right.  And I understand it to do that

as to the maximum term, but certainly not as to the violation

of a supervision.

Is it your understanding that that 20-year not only

replaces the maximum term of supervision but the term period

that I can sentence him to if he violates?  My understanding

is that's typically five, three, two, one year, depending on

the type of felony.

So, I'm not aware, and I don't understand this

particular provision that you cite, 3583(j), to otherwise

eclipse the other sections in the statute that would then

require me, if, in fact, Mr. Mumuni violates supervision, to

be able to send him back to jail for up to a period of the

maximum.

That's my question, counsel.

MR. SOLOMON:  One moment, please, your Honor.

(Pause in proceedings.)

MR. PRAVDA:  Your Honor, it's my understanding that

that's the position that the Department of Justice has taken

in other matters.

THE COURT:  Okay.

Mr. Ricco, do you have any position on what

provision of time I can send Mr. Mumuni back to custody for

if, in fact, he violates his term of supervised release, which

under the statutory scheme is life, but because the maximum

term that he could be sentenced to is 20 years, that is the

max for supervised release, but I don't see anything that

directs me to what is the maximum amount of time I could send

him back to jail for.

The Government believes it's up to the maximum of 20

years, and I'm happy to advise Mr. Mumuni of that, unless you

know otherwise.

MR. RICCO:  I know that that's the government's

view.  And Mr. Mumuni has been advised that were that view to

be accepted by the Court, in particular the Second Circuit,

1  that is a possibility.  But that is not how I understand it.

2          THE COURT:  So, then, should I assume that at

3  sentencing that is something that will be litigated or not

4  something you plan to litigate until or if you appeal your

5  client's conviction and sentence?

6          MR. RICCO:  That would be correct, your Honor.

7          THE COURT:  So, Mr. Mumuni, you've heard the

8  discussion that I've had with both sides.  I will advise you

9  that, based on the government's representation, and it appears

10 that your attorney understands that to be the Department of

11 Justice's reading of the statute, if you do violate supervised

12 release on this count, I could send you back to prison for up

13 to 20 years, without credit for any time you've previously

14 served.

15         Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  You also face a maximum fine of $250,000

18 and a special assessment of $100.  The special assessment will

19 have to be imposed.  Do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  The Government states that restitution

22 will be determined by the Court.

23         Will the Government be seeking restitution; and, if

24 so, for what?

25         MR. SOLOMON:  Your Honor, as a side note, there is a

1  victim in this matter.

2          THE COURT:  I'm aware of that.

3          MR. SOLOMON:  And we did make the victim aware of

4  today's proceedings, and because of the weather he was unable

5  to attend.

6          THE COURT:  Did the victim request that the matter

7  be adjourned so that he could attend?

8          MR. SOLOMON:  No, he did not.  He will likely be

9  attending tomorrow's proceedings as well.

10          THE COURT:  Okay.

11          MR. SOLOMON:  And I'm not aware of any damage

12  suffered by the victim, but that's something we'll address

13  with him.

14          THE COURT:  So Mr. Mumuni, I'm required to advise

15  you that there could be restitution to be determined by the

16  time that you are sentenced; do you understand that?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  As to Count Two, you face the exact same

19  consequences, the maximum term of 20 years, maximum supervised

20  release term of life.  If you violate supervised release, you

21  can be sent back to jail for up to 20 years.

22          Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  The same fine and also the same $100

25  special assessment.

As to Count Three, you face a maximum term –– this is the count charging you with conspiracy to assault federal officers.  You face a maximum term of imprisonment of five years in custody.  No mandatory minimum term, maximum supervised release term of three years.  And if you were to violate supervised release on this count, you face additional time of up to one year in custody, and, again, no credit for any prior sentence.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You also face a maximum fine of $250,000 an a $100 special assessment.

And as to all of the counts the Government is seeking restitution, so I'll advise you as to all counts. There's a potential for restitution which you will know about by the time of sentencing.  There's also a $100 fine on each count and $100 special assessment and a maximum fine of $250,000 on each count.

Turning to Count Five, attempted murder of federal officers, you face a maximum term of imprisonment of 20 years, no mandatory minimum, a maximum supervised release term of five years.  If you violate supervised release, you can be sent back to prison to serve additional time of up to two years without any credit for prior time served.

Do you understand that?

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  As as to Count Six, the final count, you

3 face a maximum term of imprisonment of 20 years in custody for

4 assault of a federal officer, no mandatory minimum.

5      Is there a question, Mr. Ricco?

6      MR. RICCO:  No, your Honor.

7      THE COURT:  Maximum supervised release term of five

8 years.  If you violate supervised release, you can be

9 resentenced for up to two years in custody without credit for

10 any prior time served.

11      Do you understand that?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  And the fine again is $250,000 maximum

14 and a $100 special assessment.  And as I indicated earlier,

15 the sentence for each of the counts, I could order that it be

16 served consecutively to your sentence on the other counts.

17      Do you understand what that means, Mr. Mumuni?

18      THE DEFENDANT:  Yes, your Honor.

19      THE COURT:  Turning to the sentencing guidelines,

20 they were implemented to guide judges, like myself, in terms

21 of determining what an appropriate sentence is.  They are

22 advisory.  I will consider them along with a number of other

23 factors before I determine what an appropriate sentence is in

24 your case.  I want to make sure that you understand that your

25 sentence will be determined by a combination of the advisory

1    sentencing guidelines, possible authorized departure from

2    those guidelines, either below or above, and other statutory

3    sentencing factors.

4             Do you understand that?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Have you and your attorney discussed how

7    the advisory sentencing guideline may apply in your case?

8             THE DEFENDANT:  Yes, your Honor.

9             THE COURT:  I will not be able to determine what the

10   advisory guideline range for your case will be until after the

11   presentence report, although I've been informed by the

12   government that it is 85 years because of the statutory max.

13            Is that correct?

14            MR. SOLOMON:  Yes, your Honor.

15            THE COURT:  I won't know what it is until I've

16   looked at the presentence report and you and your attorney

17   have had an opportunity to review it, comment on it, and make

18   any objections you believable are necessary; do you understand

19   that?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  The sentence that I ultimately impose

22   may be different from any estimate your attorney may have

23   given you; do you understand that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  After your initial advisory guideline

1  has been determined, I have the authority under certain

2  circumstances to depart upward or downward from the advisory

3  guideline range.  And I'll look at, as I indicated earlier, a

4  number of other sentencing factors in making that

5  determination.  That may result in the imposition of a

6  sentence that is either greater or lesser than the advisory

7  guideline range.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Parole has been abolished in the federal

11  system, so whatever time you're sentenced to prison you will

12  not be released on parole; do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  So, in discussing the guidelines,

15  Government, your estimate is that it's 85 years?

16             MR. SOLOMON:  That's correct, your Honor.

17             THE COURT:  And that is stacking all the counts,

18  correct?

19             MR. SOLOMON:  Yes, your Honor.

20             THE COURT:  And Mr. Ricco, do you have an estimate?

21             MR. RICCO:  Your Honor, I've reviewed the guidelines

22  with Mr. Mumuni and have had occasion to discuss it with the

23  Government.  We don't disagree that the Government's estimate

24  as to the applicable guidelines would probably apply in this

25  case, and that has been the range and the levels that we have

discussed with Mr. Mumuni in connection with advising him of
the risks of proceeding to trial.

      THE COURT:  Mr. Mumuni, do you understand that these
estimates could be wrong?

      THE DEFENDANT:  Yes, your Honor.

      THE COURT:  Do you understand that there is no
guarantee as to a particular guideline range or sentence?

      THE DEFENDANT:  Yes, your Honor.

      THE COURT:  That I will have to determine that range
and that I'm not required to sentence you within that range?

      THE DEFENDANT:  Yes, your Honor.

      THE COURT:  If the advisory guideline range in the
presentence report is different than the guideline range you
expect, you will not be able to take your plea back; do you
understand that?

      THE DEFENDANT:  Yes, your Honor.

      THE COURT:  If your ultimate sentence is different
than the estimate you hope it will be or different than what
you expect your sentence to be or different from the estimate
that your attorneys have advised you that it could be, you can
not take your plea back; do you understand that?

      THE DEFENDANT:  Yes, your Honor.

      THE COURT:  Do you have any questions about the
rights you are giving up, the punishment you face, the nature
of the charges, or anything else before you enter a plea in

1  these charges?

2          THE DEFENDANT:  I understand, your Honor.

3          THE COURT:  Do you have any questions?

4          THE DEFENDANT:  I have no questions.

5          MR. SOLOMON:  Your Honor?

6          THE COURT:  Yes.

7          MR. SOLOMON:  I'm sorry to interrupt.  Just for the

8  record, responding to something that Mr. Ricco said, while

9  there were plea negotiations in this case, there was no formal

10 plea offer extended by the Government to the defense.

11         THE COURT:  Understood.

12         Mr. Mumuni, are you ready to plead guilty?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Counsel, do you know of any reason why

15 your client should not plead guilty?

16         MR. RICCO:  No factual or legal reason, your Honor.

17         THE COURT:  Are you aware of any viable defenses?

18         MR. RICCO:  No, your Honor.

19         THE COURT:  Mr. Mumuni, I'm going to ask you your

20 plea as to each individual count.

21         What is your plea as to Count One, conspiracy to

22 provide material support to a foreign terrorist organization,

23 here, ISIL, guilty or not guilty?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  As to Count Two, attempt to provide

1  material support to a foreign terrorist organization, guilty

2  or not guilty?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  Count Three, conspiracy to assault

5  federal officers, guilty or not guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Count Five, attempted murder of federal

8  officers, guilty or not guilty?

9          THE DEFENDANT:  Guilty.

10         THE COURT:  Count Six, assault of a federal officer,

11 guilty or not guilty?

12         THE DEFENDANT:  Guilty.

13         THE COURT:  Are you making the plea of guilty to

14 each count voluntarily and of your own free will?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Has anyone threatened you or forced you

17 to plead guilty?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  Has anyone made any promise that caused

20 you to plead guilty?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Has anyone made any promises to you as

23 to what your sentence will be?

24         THE DEFENDANT:  No, your Honor.

25         THE COURT:  Mr. Mumuni, I need you to tell me what

you did to make you guilty of each of the crimes that you're

pleading guilty to.  I need to assure myself that you are, in

fact, guilty of all five crimes.

So, why don't you tell me what you did?

THE DEFENDANT:  On Count One, between February 2015

and June 2015, and within the Eastern District of New York, I

knowingly and intentionally agreed with others to provide

material support and resources to ISIL, and I knew ISIL was

involved in terrorism.

THE COURT:  And you said that was in the Eastern

District of New York.  Where?

THE DEFENDANT:  Staten Island.

THE COURT:  And this is between February and June of

2015?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And what did you do?

THE DEFENDANT:  I was talking about it with friends,

about traveling overseas.

THE COURT:  Traveling overseas.  To do what, assist

ISIS in his some way.

THE DEFENDANT:  Yes, to join ISIS and defend Islam.

THE COURT:  And you said you were doing this with

friends, correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you understood that by going

1  overseas to join ISIS you would be providing material support

2  to them?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And you said you also knew that ISIL was

5  involved in terrorism, correct?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  As to Count Two?

8          THE DEFENDANT:  Between February 2015 and June 2015,

9  and within the Eastern District of New York, I knowingly and

10 intentionally attempted to provide material support and

11 resources to ISIL by driving another individual to purchase

12 shoes and supplies to be taken overseas to further the

13 objectives of ISIS and have discussions with others about

14 traveling to the Middle East to defend Islam, and I did know

15 that ISIS was involved in terrorism.

16         THE COURT:  And you did all of these acts knowingly

17 and intentionally?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  And it was your intent to be part of

20 this group?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Okay.  Count Three, conspiracy to

23 assault federal officers.

24         THE DEFENDANT:  Between May 2015 and June 2015, and

25 within the Eastern District of New York, I knowingly and

intentionally agreed with others to forcibly oppose and impede

any law enforcement officer who would prevent me from

traveling overseas to join ISIL in the Middle East by use of

dangerous or deadly weapon.  In June 2015, I lunged at a law

enforcement officer with a knife.

THE COURT:  And where did this take place?

THE DEFENDANT:  In my house in Staten Island.

THE COURT:  And you said you lunged at the officer

with a knife?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you knew him to be a federal

officer?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And why was he at your house?

THE DEFENDANT:  For a search warrant.

THE COURT:  Okay.  Count Five, attempted murder of

federal officers.

THE DEFENDANT:  On June 17, 2015, during the

execution of a search warrant at my home, within the Eastern

District of New York, I did deliberately and intentionally

attempt to kill a law enforcement officer by launching at him

with a knife knowing that if I succeeded in my attempt I could

kill him.

THE COURT:  Was that your intent?

THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And you said the officer was there to

2   execute a search warrant, correct?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Assault of a federal officer, Count Six.

5   Is that the same conduct on June 17?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And what happened when you lunged at the

8   officer with your knife?

9          THE DEFENDANT:  They tackled me and took me to the

10  ground.

11         THE COURT:  What would the Government's proof at

12  trial be?

13         MR. SOLOMON:  As to which element, I'm sorry?

14         THE COURT:  As to all of the counts.

15         MR. SOLOMON:  As to all of the counts.  Your Honor,

16  the Government would prove that the defendant was a part of a

17  group of like-minded individuals who had pledged allegiance to

18  ISIL and they conspired to provide material support to ISIL by

19  arranging for members of the group to travel --

20         THE COURT:  Slow down.  The court reporter has to

21  take it down.

22         MR. SOLOMON:  They conspired to provide material

23  support to ISIL by arranging for some of the members of the

24  group to travel to join ISIL.  In fact, one of the members of

25  the group did attempt to travel to Syria, via Jordan.  That

1    person's name was Nader Saadeh.

2           Alternatively, the group conspired to provide

3    material support to ISIL by conducting a domestic terror

4    attack on behalf of the organization.

5           THE COURT:  What are you referring to?

6           MR. SOLOMON:  Specifically, one of the members of

7    the group, the co-defendant Munther, had received bomb-making

8    instructions, and he and this defendant were preparing to

9    conduct a domestic terror attack.

10           THE COURT:  Okay.

11           MR. SOLOMON:  That's with respect to the material

12    support charges, your Honor.

13           THE COURT:  Yes.

14           MR. SOLOMON:  With respect to --

15           THE COURT:  One second.

16           Mr. Mumuni, do you object to any of the allegations

17    as set forth by the Government; rather, do you agree with the

18    Government's statement of the facts in this case?

19           MR. RICCO:  Judge, I think the Government's proof

20    would show that the conduct engaged in by Mr. Saleh is one

21    thing.  And with respect to Mr. Mumuni, he has no objection

22    that there were discussions about that with him.

23           THE COURT:  Right.  That was the Government's

24    statement that he conspired with Mr. Saleh to engage in the

25    domestic attack, Mr. Saleh having received bomb-making

1  instructions.  So, the question is whether or not he agrees

2  that he conspired with him.

3         MR. RICCO:  There were discussions about that, your

4  Honor, yes.

5         THE COURT:  Go ahead.

6         MR. SOLOMON:  To continue, your Honor, because the

7  group of like-minded individuals was being surveilled by

8  members of law enforcement, there was an agreement to attack

9  the members of law enforcement so that the members of the

10  conspiracy could continue with their planning undeterred by

11  the continuous surveillance.

12         So, that brings us to the nonmaterial support

13  charges, your Honor.

14         Count Three charges the defendants with conspiracy

15  to assault federal officers.  So, as I just discussed, your

16  Honor, there was an agreement to attack the members of law

17  enforcement who are performing surveillance and to do so with

18  deadly weapons.  In the case of this defendant, he did attack

19  a special agent from the FBI with a kitchen knife during

20  execution of a judicially-authorized search warrant at the

21  defendant's home in Staten Island.

22         THE COURT:  Okay.

23         MR. SOLOMON:  And we would prove, I think as the

24  defendant has already allocuted to, we would prove that he

25  did, in fact, lunge at law enforcement officers with a knife

1    and, in fact, stabbed a law enforcement officer repeatedly in

2    the torso on June 17, 2015.

3            THE COURT:  He didn't admit to that.  He said he was

4    taken to the ground when he lunged at him.

5            MR. SOLOMON:  So we would prove that, your Honor.

6            THE COURT:  Mr. Ricco, does your client dispute

7    those facts?

8            MR. RICCO:  He doesn't dispute the fact that he

9    lunged at the officer, he made at least one contact with him,

10    and was taken to the ground.

11            THE COURT:  Okay.

12            MR. SOLOMON:  With respect to Count Five, attempted

13    murder of federal officers, the Government would prove that

14    this attack at Mr. Mumuni's house did occur and that in his

15    post arrest statement the defendant admitted that he was

16    waiting to attack law enforcement.  He was waiting for these

17    circumstances to occur.  He had a kitchen knife hidden away in

18    his bedroom in a T-shirt, he also had a kitchen knife hidden

19    in his car, and, so, he was prepared to attack and kill

20    officers who were performing surveillance on him.

21            THE COURT:  Anything else?

22            MR. SOLOMON:  And I think that also covers Count

23    Six, which is assault of a federal officer.

24            THE COURT:  It does.

25            MR. SOLOMON:  Your Honor, I believe there are a

1   couple of elements which we need to address.

2        THE COURT: Okay.

3        MR. SOLOMON: With respect to Count Three,

4   conspiracy to assault federal officers, the Government would

5   have to prove that the overt act was committed to further some

6   objective of the conspiracy. I don't think we heard anything

7   in that regard from the defendant.

8        And finally, with respect to Count Five, attempted

9   murder of federal officers, we would have to prove that the

10   defendant acted with malice aforethought and that he acted

11   with premeditation.

12        THE COURT: Okay. And Mr. Mumuni, I believe I read

13   to you the overt acts that are charged in Count Three of the

14   indictment. In one of the overt acts, it charges that you

15   attempted to attack law enforcement.

16        Did you, in fact, do that?

17        THE DEFENDANT: Yes, your Honor.

18        THE COURT: With the knife, as alleged in the overt

19   act?

20        THE DEFENDANT: Yes, your Honor.

21        MR. RICCO: And your Honor, he stated that.

22        THE COURT: I thought he did.

23        MR. RICCO: He said on June 17 he lunged at a law

24   enforcement officer.

25        THE COURT: I guess the issue is, did you do that

1    with the intent to continue to assist ISIS, to further the

2    objectives of the conspiracy here?

3              THE DEFENDANT:  Yes, if I was going to be stopped

4    from going.

5              THE COURT:  Going abroad?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  I see.  That satisfies that element.

8              And what was your other question?

9              MR. SOLOMON:  Yes, your Honor.  Count Five, the mens

10   rea requirements proving malice aforethought and acting with

11   premeditation.

12             THE COURT:  I thought he allocuted to that also, the

13   attempted murder.

14             So, Mr. Mumuni, it sounds like you were planning to

15   go abroad to assist ISIS.  You knew that you were being

16   surveilled by law enforcement.  Correct?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  And at some point, did you make plans to

19   prevent law enforcement or to attack them in some way, there

20   by preventing them from stopping you, as you indicated?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  You allocuted that it was your intent to

23   murder them, if necessary; is that accurate?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And, so, when you lunged at law

enforcement on June 17, 2015, did you do so with the intent to
murder them if necessary?  And you can take a minute and speak
to your attorney if you need to.

            The issue, Mr. Ricco, is whether or not he acted
with premeditation, planning, and deliberation and, also,
whether it was willful.

            THE DEFENDANT:  I knew by lunging with them at a
knife, if I succeeded in my attempt I could kill them.

            THE COURT:  Okay.  I believe that satisfies all of
the elements.

            Based on the information given to me, as well as my
observation of the defendant and his demeanor here in court,
the representation of counsel for both sides, I find that the
defendant is fully competent and capable of entering an
informed plea, that he is aware of the nature of the charges
and the consequences of the plea, and that his plea of guilty
to each count is a knowing and voluntary plea and is supported
by an independent basis in fact containing the essential
elements of the offenses.

            I, therefore, accept the plea of guilty to the five
counts of the indictment charged against Mr. Mumuni:
Conspiracy to provide material support to a foreign terrorist
organization, attempt to provide material support to a foreign
terrorist organization, conspiracy to assault federal
officers, attempted murder of federal officers, and assault of

1  a federal officer.  And I now adjudge you, Mr. Mumuni, guilty

2  of all five offenses.

3          The probation department will prepare a written

4  presentence report.  They will interview you.  Your attorneys

5  can be there with you if you would like them to be.  You will

6  be given an opportunity, as I indicated earlier, to file any

7  objections to the presentence report and the guideline

8  calculation in that report.  So, I'm referring you to the

9  probation department.

10         Do we have a sentencing date?

11         THE COURTROOM DEPUTY:  May 16, 2017, at 10 a.m.

12         THE COURT:  Is there anything else?

13         MR. SOLOMON:  Not from the Government, thank you.

14         THE COURT:  Mr. Ricco?

15         MR. RICCO:  No, your Honor.  Thank you very much.

16         THE COURT:  Okay.  We're adjourned.

17

18         (Matter concluded.)

19

20

21  I certify that the foregoing is a correct transcript from the

22  record of proceedings in the above-entitled matter.

23

24      /s/ Linda A. Marino          March 9, 2017

25  _____     _____
        LINDA A. MARINO                DATE

LAM      OCR      RPR