```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------------x
    UNITED STATES OF AMERICA,
3
                        Plaintiff,          Docket No.:
4                                           15 CR 393 (MKB)
            versus
5
    MUNTHER OMAR SALEH and FAREED MUMUNI,   U.S. Courthouse
6                                           225 Cadman Plaza East
                        Defendant.          Brooklyn, NY 11201
7   ------------------------------------x
                                            September 29, 2016
8                                           10:00 a.m.

9          Transcript of Criminal Cause for Status Conference

10  Before:   HONORABLE MARGO K. BRODIE,
                                District Court Judge
11

12                          APPEARANCES

13  For the Government:        ROBERT L. CAPERS, ESQ.
                               United States Attorney
14                             Eastern District of New York
                               271 Cadman Plaza East
15                             Brooklyn, New York 11201
                               BY:  IAN RICHARDSON, ESQ.,
16                                   ALEXANDER SOLOMON, ESQ.,
                                     DOUGLAS PRAVDA, ESQ.,
17                                   Assistant U.S. Attorneys

18  For Defendant Saleh:       DEBORAH A. COLSON, ESQ.

19  For Defendant Mumuni:      ANTHONY RICCO, ESQ.
                               KENNETH MONTGOMERY, ESQ.
20
    Also Present:              SARAH WALDRON, Paralegal
21
    Court Reporter:            MICHELE NARDONE, CSR
22                             Official Court Reporter
                               Phone:  718-613-2601
23                             Email:  Mishrpr@aol.com

24  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
25
```

USA v. Saleh, et al.

1          (In open court.)

2          THE COURT:  Good morning, everyone.  Please be seated.

3          (Defendants present.)

4          THE CLERK:  This is criminal cause for a status

5   conference, docket number 15 CR 393, USA versus Munther Saleh,

6   et al.

7          Counsel, please state your name for the record.

8          MR. SOLOMON:  Good morning, Your Honor.  Alex Solomon,

9   Doug Pravda, and Ian Richardson for the government.

10         THE COURT:  Good morning, counsel.  You can remain

11  seated and keep your mics on, please.

12         MR. RICCO:  Yes.  Good morning, Your Honor.  Anthony

13  Ricco and Ken Montgomery for Fareed Mumuni.

14         THE COURT:  Good morning, counsel.

15         MS. COLSON:  Good morning, Your Honor.  Deborah Colson

16  for Mr. Saleh.  With me is paralegal Sarah Waldron.

17         THE COURT:  Good morning.  Good morning, everyone, and

18  good morning, Mr. Saleh and Mr. Mumuni.

19         We are here for a CIPA conference.  Counsel, what is

20  the status?

21         MR. SOLOMON:  Yes, Your Honor.  I think in today's

22  conference we were hoping to accomplish a number of things,

23  including scheduling deadlines for CIPA practice, as well as

24  deadlines, perhaps, for motion practice, standard motion

25  practice, and perhaps a trial schedule as well.

USA v. Saleh, et al.

1       THE COURT:  Okay.

2       MR. SOLOMON:  Turning first to CIPA, the government

3  has identified some additional materials that we will need to

4  review in anticipation of preparing its CIPA brief.

5       The government has spoken to both defense counsel

6  about a potential schedule, in which we would submit our CIPA

7  Section 4 brief in or about mid-January.  I believe Mr. Ricco

8  was in agreement with that schedule; Ms. Colson was not.

9       THE COURT:  Okay.

10      MR. SOLOMON:  As Your Honor is aware, a CIPA

11  submission requires work from components outside of the U.S.

12  Attorney's office and requires certifications from the heads of

13  the agencies who are asserting state secrets privilege.  So we

14  will, as a matter of course, need to obtain signature and a

15  declaration from Attorney General Loretta Lynch, among other

16  persons.

17      So we believe a four-month schedule is quite standard

18  for CIPA practice in this court and for courts throughout this

19  country.

20      THE COURT:  Referring to mid-January?

21      MR. SOLOMON:  Yes.

22      THE COURT:  And keeping in mind that we have the

23  holidays, both in November and December.

24      MR. SOLOMON:  Yes, Your Honor.

25      THE COURT:  Okay.  Go ahead.

1    MR. SOLOMON:  With respect to trial schedule, we had

2    discussed with Mr. Ricco and Ms. Colson the possibility of

3    doing trial in either mid-March or in April, sometime during

4    the spring.  We think that will be feasible from the

5    government's perspective with respect to our disclosure

6    obligations.  I think -- I received a positive reception from

7    both defense counsel.

8    One thing I raised with both defense counsel is that

9    there are likely Bruton issues in this case with respect to the

10   post-arrest statements by both defendants.  Ms. Colson has

11   asked for the post-arrest statement of Mr. Ricco's client,

12   which the government has not turned over to Ms. Colson yet.

13   Mr. Ricco has expressed opposition.  So we are going

14   to try to work through that, and if we require the

15   government's -- if we require the court's intervention, of

16   course we will bring this to the court's attention; but I think

17   we will be able to work it out.

18   THE COURT:  Okay.  Anything else from the government?

19   MR. SOLOMON:  With respect to outstanding discovery, I

20   think Ms. Colson has requested certain items.  The government

21   has reviewed its files and identified some additional items

22   that it will disclose.

23   In addition to the items covered by the protective

24   orders in this case, there is also the possibility of receiving

25   some overseas evidence, which we will forward, obviously, to

1    the defendants as soon as we receive it.

2          Finally, we have made classified disclosures, I think

3    as I informed the court in the previous status conference, and

4    a good portion of these classified disclosures will be provided

5    to defense counsel in the form of unclassified disclosures as

6    well.

7          Lastly, I think it might be prudent to schedule other

8    motion practice while the CIPA work is ongoing so we can work

9    on multiple fronts, preparing for the potential of a spring

10   trial.

11         THE COURT:  Okay.  So, turning to the defense, first,

12   Ms. Colson, with regard to the schedule, what is your position

13   on the schedule for the Section 4 motion?

14         MS. COLSON:  Well, Your Honor, I understand that the

15   government has lots of work ahead of it to provide whatever

16   material they need to provide; but I also have the needs of my

17   client in mind.  He has been in jail now for more than 15

18   months, which is certainly a lot of time that the government

19   has already had to provide discovery.

20         And on almost every occasion in which they have set a

21   date for provision of discovery, they have then requested

22   additional time.  So I am a bit wary about giving them another

23   four months, especially because some of the evidence that I

24   think will be addressed in this CIPA Section 4 memo is really

25   quite critical to my evaluation of the case and my ability to

USA v. Saleh, et al.

1  enter into plea negotiations with the government.

2          I want to address one piece of evidence in particular,

3  because I do think it's emblematic of the other evidence that

4  may be outstanding.  In page 8 of its reply brief, with respect

5  to whether or not they should be permitted to file their CIPA

6  motion ex parte, the government cites an executive order, which

7  states that classified evidence is only to be provided to

8  attorneys who both have a security clearance and a need to

9  know; and what they say in this case is that while we have

10  security clearance, we don't actually have a need to know,

11  certainly at this time, what is in that classified evidence

12  that they would like to address with the court ex parte.  I

13  strenuously disagree with that.

14          The government --

15          THE COURT:  With which part of it?

16          MS. COLSON:  Well, the government has repeatedly

17  alleged -- and this is even within the indictment they have

18  made this allegation in paragraph 4A of the indictment -- that

19  Mr. Saleh and Mr. Mumuni exchanged electronic communications in

20  early June of 2015.

21          THE COURT:  Okay.

22          MS. COLSON:  And that within those electronic

23  communications they made a plan to attack law enforcement

24  officers.  And those electronic communications are referred to

25  repeatedly by the government, most notably in the indictment.

1    The government also alleges that not two weeks later

2    Mr. Mumuni actually did attempt to attack law enforcement, and

3    the idea or the suggestion is that part of the reason he did

4    that is because my client encouraged him to in those electronic

5    communications.  In fact, they have charged my client, in count

6    three of the indictment, with conspiracy to assault federal

7    officers, presumably because he engaged in those electronic

8    communications with Mr. Mumuni.

9         THE COURT:  Okay.

10        MS. COLSON:  Despite repeated written and oral

11   requests, the government has never turned over those electronic

12   communications.  They have withheld them from us.

13        They have most recently said to us that they would

14   provide those within 30 days of trial.  I have no idea why.  I

15   can only assume that those electronic communications are

16   classified and that they will be addressed in the government's

17   ex parte CIPA Section 4 brief.

18        I believe that we have a need to know whether those

19   communications exist and we have a need to know that now, not

20   30 days before trial.  This is one of the most serious

21   allegations against my client.  I don't know if the evidence

22   even exists.  I don't know what context it exists, and I

23   certainly don't know what communications were sent before and

24   after that might mitigate the allegations the government is

25   making.

USA v. Saleh, et al.

1    THE COURT:  Well, have you asked the government why

2    they haven't produced it, whether or not it's subject to a

3    protective order or it's classified?

4    MS. COLSON:  I have asked the government why, and they

5    have said that they cannot tell me why.

6    THE COURT:  Okay.

7    MS. COLSON:  So the only conclusion I can come to is

8    that it will be addressed in their ex parte application.

9    THE COURT:  Okay.

10   MS. COLSON:  And I believe, as I said, that I cannot

11   enter into plea negotiations with the government unless I

12   understand the nature of that evidence, the context in which

13   those statements were made, and I have reviewed all of the

14   other discovery in this case.  I am prepared to make a

15   presentation to the government about the nature of the evidence

16   against my client, but because they are withholding what I

17   believe to be the most important piece of evidence I can't go

18   forward.

19   THE COURT:  Understood.  So it sounds like the only

20   thing you and I can do is wait for the process to work.  The

21   government isn't producing that information.  I assume it isn't

22   either because it's subject to a protective order or it's part

23   of the classified information which then has to be dealt with

24   through the process.

25   MS. COLSON:  Well, I guess what I'm saying and what I

1   tried to address in my brief is that, you know, I object to

2   that process.

3        THE COURT:  I understand that you do, but the case law

4   is very clear.  I don't see that I could do anything different

5   than the process that the government has suggested.

6        I read your papers, and I understand that in fact it

7   is discretionary as to whether or not the court holds an

8   ex parte meeting with the government to review this evidence;

9   but, in looking at the case law and all of the cases, every

10  single case that has been handled in this circuit that is the

11  process that has been used.  So I'm not clear that there is a

12  basis, factually or legally, for me to hold a process different

13  than the process that has been used in all of these types of

14  cases.

15       I understand that what you are saying to me is part of

16  the evidence that's being withheld, it is critical evidence,

17  critical to your case and critical to your ability to in fact

18  engage in plea negotiations that may dispose of this case short

19  of trial, but there is really no other process or no other way

20  for that information to get to you other than going through

21  this process.

22       MS. COLSON:  Well then, I would suggest and/or request

23  again, respectfully, that I be given an opportunity to meet

24  with the court ex parte to at least explain why in context I

25  believe this evidence is so critical and why I believe there is

MICHELE NARDONE, CSR – Official Court Reporter

USA v. Saleh, et al.

1  other evidence out there that I need to see, but it, again --

2          THE COURT:  I don't think the court needs any

3  convincing that the evidence is critical, counsel.  But I'm

4  happy to have an ex parte meeting with defense counsel as to

5  their need for evidence, but your need for that evidence is

6  abundantly clear to me.

7          MS. COLSON:  Okay.  I would like to take the

8  opportunity to meet with the court at the court's convenience

9  to discuss this in more detail and address other pieces of

10  evidence as well.

11          THE COURT:  Right.  But I think in the process it

12  makes sense for me to first see the evidence from the

13  government after they have made the application, review it, and

14  then meet with defense counsel, understand or at least try to

15  get an understanding of the defense and also the information

16  that you will need to appropriately defend this action, and

17  then move forward under those circumstances.

18          MS. COLSON:  Okay.  That makes perfect sense to me.

19          But it again, you know, as I -- as I explained why

20  this is so critical and critical to our plea negotiations, it

21  then brings us back to the scheduling and why it's going to

22  take the government four months just to provide the court with

23  the ex parte submission.  I don't then know how long it will

24  take for the court to review it and then meet with me.

25          But again, we have reviewed everything else.  We are

1    eager to enter into plea negotiations with the government; and

2    it doesn't seem to me at this point, 15 months after my client

3    was arrested, that they need an additional four, maybe now up

4    to six months, to provide this information.  So I do object to

5    that schedule.

6            THE COURT:  Okay.  I understand.  Your objection is

7    noted for the record but overruled in view of the process that

8    the government has to engage in to actually be able to present

9    this information to the court.

10           I appreciate that, especially with the holidays in

11   November and December, where many people are simply not

12   available, that it will take them this period of time.  It is a

13   reasonable period of time, where today is the second to last

14   day of the month of September.  So we are talking about putting

15   aside the time period for the holidays, two and a half months,

16   in reality, for government to get me this information.

17           In terms of how quickly I will act on it, it is a

18   priority.  I'm aware that the defendants have been incarcerated

19   for quite some time, and so I have no reason to not act on the

20   information as soon as it is provided to me.  As soon as the

21   government does that, I will review the information and

22   immediately reach out to counsel about scheduling a time for

23   you to come in and meet with the court so that we can get this

24   matter moved forward.

25           In view of the government's proposal of a trial date

USA v. Saleh, et al.

1    in March or April, if we were to set a trial date that

2    certainly will dictate how quickly everything has to move.

3    But, putting aside that and the motion that the government is

4    going to make, are the defendants planning on making any

5    additional motions with regard to the discovery that you

6    already have?

7                MS. COLSON:  Yes, Your Honor, I am.

8                THE COURT:  Okay.

9                MS. COLSON:  At least a motion to suppress my client's

10   statement, a motion to suppress the search of his home, a

11   motion with respect to the FISA evidence, and possibly some

12   discovery motions as well.

13               THE COURT:  Okay.  So then we need to set up a

14   schedule for that, because all of this can be litigated

15   separate and apart from the motion that the government plans to

16   make pursuant to Section 4.  So that we are not delaying moving

17   forward with this case and we are in fact getting ready for the

18   trial in March or April.

19               So why don't you tell me how much time you would need

20   to make your motion or whether or not the parties have

21   discussed the motion schedule with regard to the regular

22   discovery in this case.

23               MS. COLSON:  I have not spoken with the government,

24   but Mr. Ricco and I are in agreement that we could get our part

25   done by early November.

1          THE COURT:  Okay.  Do you want to give me a date, or

2     do you want me to pick a date in November for you to submit

3     your motion?

4          MS. COLSON:  A date in November is fine.  Thank you.

5          THE COURT:  Why don't I make it November 14.  How much

6     time will the government need to respond?

7          MR. SOLOMON:  I'm sorry.  One moment, please, Your

8     Honor.

9          (Pause.)

10         MR. SOLOMON:  Would December 19 be acceptable?

11         THE COURT:  I will give you until December 19, with

12    the understanding you will not be receiving any adjournment of

13    that schedule.

14         How much time will the defendants need to reply?

15         MS. COLSON:  Maybe right after the new year.

16         THE COURT:  Okay.  I totally can appreciate that.  How

17    about January 9?

18         MS. COLSON:  That works.  Thank you.

19         MR. RICCO:  Thank you.

20         THE COURT:  So that's the motion schedule with regard

21    to the regular discovery.

22         As for a trial date, I will let the parties -- I will

23    let Ms. Francis tell you what dates are available, and the

24    parties can decide on that.  Do the parties have a sense of how

25    long they expect the trial to last?

USA v. Saleh, et al.

1          MR. SOLOMON:  Two to three weeks, Your Honor.

2          THE COURT:  Two to three weeks for you just to present

3    your evidence?

4          MR. SOLOMON:  I think that would include any defense

5    case, anticipating one or two days for the defense case.

6          THE COURT:  Okay.  Explain to me why you believe the

7    trial is going to take so long.  How many witnesses

8    approximately?

9          MR. SOLOMON:  I don't have an exact number of law

10   enforcement witnesses.  There are quite a number of them.

11   There are some cooperating witnesses who will be testifying,

12   and I expect their testimony could be lengthier.

13         THE COURT:  Okay.  Ms. Colson and Mr. Ricco, do you

14   guys have a sense of how long a defense case you may have?

15         MR. RICCO:  Judge, on behalf of Mr. Mumuni, right now

16   I don't see our case taking more than two days to present.

17         THE COURT:  Okay.  Ms. Colson, any sense?

18         MS. COLSON:  I would say the same thing for Mr. Saleh.

19         THE COURT:  Okay.

20         THE CLERK:  So for March -- we have March 6, March 20.

21         THE COURT:  It has to be later in the month.

22         THE CLERK:  March 20.

23         THE COURT:  Okay.

24         THE CLERK:  Then we have April 3rd and April 17.

25         THE COURT:  Off the record, my conversation with

USA v. Saleh, et al.

1  Ogoro.

2          (Discussion.)

3          THE COURT:  So here is what's available on the

4  calendar as of now:  March 20, April 3rd will likely be a

5  problem, May 1st, May 15.  I will check to find out if a date

6  the second week in April, April 17, may also work with the

7  court's schedule.

8          I'm giving the parties those dates so that you can

9  discuss and figure out amongst yourself what date will be best

10  for trial.  Once I set the trial date I don't want to have to

11  change it.

12          MR. SOLOMON:  Yes, Your Honor.

13          THE COURT:  Okay.  So you should think about the

14  different dates, and obviously check with your clients and

15  witnesses to see what date will be best.

16          MR. SOLOMON:  Your Honor, in light of the Bruton

17  issue, it is possible that two separate trials will be

18  necessary.

19          THE COURT:  If that's the case, then you need to let

20  me know sooner rather than later.

21          MR. SOLOMON:  Yes, Your Honor.

22          THE COURT:  So I can figure that part of it out.  If

23  the parties can't work out the Bruton issue you need to make a

24  motion, counsel.

25          MR. SOLOMON:  Yes.

MICHELE NARDONE, CSR – Official Court Reporter

1          THE COURT:  And notify the court.  Okay.

2          So we have scheduled the motion schedule for

3    nonclassified discovery.

4          MR. RICCO:  Your Honor, can we consult with the

5    government with respect to the trial date issue?

6          THE COURT:  Do you want to do it now?

7          MR. RICCO:  Yes, only because knowing my schedule, the

8    sooner I set that date, the more realistic that date is.

9          THE COURT:  Okay.  I will give the parties a few

10   minutes to do that.

11          (Counsel confer.)

12          THE COURT:  Okay?

13          MR. RICCO:  Your Honor, if it's permissible with the

14   court, we would like to select the May 15 date.

15          THE COURT:  Okay.  All right.  So we are setting

16   May 15 as the trial date.

17          Now, with going back to the Section 4 briefing,

18   obviously the government is going to get back to me by

19   mid-January.  I will review it and meet with defense counsel.

20          And what else, assuming that there is information that

21   then has to be disclosed, counsel?

22          MR. SOLOMON:  Our anticipation is there is going to be

23   very little additional disclosures that will follow from the

24   CIPA process, aside from the other materials covered by the

25   protective order.

USA v. Saleh, et al.

1    THE COURT:  When do you disclose the information

2  that's now -- well, the protective order, all of that

3  information has been provided, subject to the protective order?

4    MR. SOLOMON:  I'm sorry.  I'm not following.

5    THE COURT:  I'm not following either.  The protective

6  order that you are referring to, counsel, is that the

7  protective order pursuant to which you have been disclosing

8  some of the information, or is that a protective order where

9  certain information has not yet been disclosed?

10    MR. SOLOMON:  The latter, Your Honor.

11    THE COURT:  When is that information to be disclosed?

12  Now that we have a trial date, was it set based on the trial

13  date?

14    MR. SOLOMON:  I believe, according to the protective

15  order, the contemplated schedule was no later than one month

16  before trial; and we will, to the extent possible, try to do

17  better than that.

18    THE COURT:  Okay.  I will have to take a look at that

19  also to see, and the defendants certainly are free to make a

20  motion to have that disclosed sooner, if they believe that

21  should be the case, in which case I will look at the

22  information and decide whether there should be an earlier

23  disclosure date for that information.

24    MR. SOLOMON:  Yes, Your Honor.

25    THE COURT:  Okay.  What else do we need to discuss

USA v. Saleh, et al.

1    today?

2            MR. SOLOMON:  One thing I neglected to alert the

3    court.  I told Mr. Ricco this before we came into court today

4    but didn't have a chance to tell Ms. Colson.

5            It's possible the government will supersede.  If we

6    supersede, we will try to do it in the next 30 days or so.  The

7    superseder would be based on the same evidence.  There will be,

8    you know, no surprises out of left field for defense counsel.

9            THE COURT:  No additional evidence, but I assume there

10   will be new charges, counsel?

11           MR. SOLOMON:  There is the possibility of new charges

12   based on the same evidence.

13           THE COURT:  Okay.  If you are going to do that, I will

14   require you to do it within a month, otherwise you are going to

15   trial on this indictment.

16           MR. SOLOMON:  Okay.

17           THE COURT:  Anything else from the government?

18           MR. SOLOMON:  One moment, please, Your Honor.

19           (Pause.)

20           MR. SOLOMON:  Nothing further, Your Honor.  Thank you.

21           THE COURT:  From the defense, anything else we need to

22   discuss today?

23           MR. RICCO:  Your Honor, not on behalf of Mr. Mumuni.

24           MS. COLSON:  No.  Thank you, Your Honor.

25           THE COURT:  Okay.  So we will a trial date, we have a

USA v. Saleh, et al.

1  deadline for the government's Section 4 briefing, and we have a

2  motion schedule with regard to motions to be made by the

3  defense.

4        With regard to any in limine motions by the

5  government, 404(b) or otherwise, those all have to be made at

6  least a month in advance of trial.

7        MR. SOLOMON:  Yes, Your Honor.

8        THE COURT:  Okay.  I think that's it for today.

9        MR. SOLOMON:  We would just ask that time be excluded

10  on the basis of this being designated a complex case and also

11  in light of the forthcoming motion practice.

12        THE COURT:  You ask that each time, counsel, and my

13  response is the same each time.  There is no need for me to do

14  that.

15        The case is designated a complex case.  So time

16  continues to be excluded.

17        Have a great day, everyone.

18        MR. SOLOMON:  Thank you.

19        (End of proceedings.)

20              o O o

21

22  Certified to be a true and accurate transcript.
    /s/ Michele Nardone
23  MICHELE NARDONE, CSR -- Official Court Reporter

24

25