UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

       - against -                            Docket No. 15 Cr. 393 (MKB)

FAREED MUMUNI,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT


*Attorney for Fareed Mumuni*

*Anthony L. Ricco*
ANTHONY L. RICCO, ESQ.
20 Vesey Street, Suite 400
New York, New York 10007
(212) 791-3919
*Tonyricco@aol.com*

Steven Z. Legon, Esq.

# ANTHONY L. RICCO

ATTORNEY AT LAW

20 VESEY STREET • SUITE 400
NEW YORK, NEW YORK 10007
—
TEL (212) 791-3919
FAX (212) 791-3940

tonyricco@aol.com

Steven Z. Legon
*Of Counsel*

January 25, 2018

**By E.C.F.**

Hon. Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: ***United States v. Fareed Mumuni***, Docket No. 15 Cr. 393 (MKB)

Dear Judge Brodie:

      This Sentencing letter is submitted pursuant to Rule 32 (f)(1) and (2) of the Federal Rules of Criminal Procedure, and it sets forth Michael Johnson's objections to the Presentence Investigation Report (PSR) and as a request for an evidentiary hearing to resolve any material disputed issues of fact pursuant to U.S.S.G. § 6A1.3(b) and *United States v. Fatico,* 579 F.2d 707 (2d Cir. 1978).

## Objections to Presentence Investigation Report

**1.**      **Fareed Mumuni objects to paragraph 14**

      Paragraph 14 states:

> The investigation revealed that **Fareed Mumuni** had assisted Saleh in his efforts to carry out a terrorist attack on behalf of ISIL. Specifically, members of law enforcement performing surveillance had observed **Mumuni** and Saleh meeting on several occasions during May 2015. In addition, on May 12, 2015, judicially authorized electronic surveillance revealed that Saleh contacted **Mumuni** to indicate that he had money and wanted to meet that day, stating that he had money that "talks," possibly referring to funding for an illegal transaction. During the same communication, Saleh agreed to meet with **Mumuni** in Staten Island, New York, at the "same place" in

1

front of the courthouse. Saleh then proceeded to travel to Staten Island by subway and ferry. During this trip, Saleh performed counter-surveillance maneuvers and successfully eluded surveillance by law enforcement while in Staten Island.

Objection and Comment

The information set forth in the PSR fails to provide sufficient indicia of reliability to support the conclusion that Fareed Mumuni assisted Saleh in his efforts to carry out a terrorist attack on behalf of ISIL, *aliunde*.

**2.    Fareed Mumuni objects to paragraph 15**

Paragraph 15 states:

> Members of law enforcement also observed **Mumuni** and Saleh meet on May 31, 2015 in the lower Manhattan section of New York. Subsequently, on June 1, 2015, in a judicially authorized recorded phone call, Saleh and a co-conspirator discussed Saleh's visit with **Mumuni** in lower Manhattan. A co-conspirator asked, "How was the meeting with your guys?" After Saleh asked for clarification, the co-conspirator responded, "I don't know . . . You got tea with them." After Saleh asked again for further clarification, the coconspirator stated, "Tea, wink, wink, tea" and added, "Your buddies man, Staten Island." Saleh then stated, "Oh yeah, it was awesome." Saleh further indicated that the meeting was "motivating, it was great." According to the investigating agent, the reference to "motivating" suggests that **Mumuni** may have been involved in Saleh's planning for a terrorist attack.

Objection and Comment

As set forth above, in our objection to paragraph 14, the information set forth in paragraph 15 lacks sufficient indicia of reliability to support the conjecture "that **Mumuni** may have been involved in Saleh's planning for a terrorist attack." We therefore object to this conclusion based upon the information known to counsel.

**3.    Fareed Mumuni objects to paragraph 21**

Paragraph 21 states:

> While the door was still open, FBI special agents and task force officers observed **Mumuni** descend the main staircase of the residence. The officers, who clearly identified themselves as members of law enforcement, repeatedly directed **Mumuni** to move to a couch in the living room. **Mumuni** ignored the officers' commands and instead suddenly lunged at the officers

with a large kitchen knife. As the officers attempted to restrain **Mumuni**, **Mumuni** repeatedly attempted to plunge the kitchen knife into the torso of an FBI special agent and reached out with his hand in the vicinity of a rifle used by another member of law enforcement. None of the stabs penetrated the FBI special agent's body armor, and the agent suffered only minor injuries. While the agents attempted to subdue **Mumuni** to the ground, he reached for an agent's firearm and he attempted to pull the trigger. FBI specIal agents and task force officers then disarmed **Mumuni** and placed him under arrest.

Objection and Comment

As stated during the plea allocution, Fareed Mumuni acknowledges that he lunged at a law enforcement officer with a large kitchen knife and has taken responsibility for his charged conduct; however, he objects to the account of what happened next as set forth in the PSR. Fareed Mumuni, armed with a kitchen knife, encountered law enforcement agents wearing tactical gear with body armor, and carrying assault rifles. Fareed Mumuni asserts that upon lunging at the first agent, he was taken down and immediately subdued by the agents. Fareed Mumuni denies any allegation that "he reached for an agent's firearm and attempted to pull the trigger."

4. **Fareed Mumuni objects to paragraph 24**

Paragraph 24 states:

> **Mumuni** admitted that he and Saleh had spoken about how to make and use a bomb. Saleh had told **Mumuni** that he knew how to make a pressure-cooker bomb and that Saleh would give the bomb to **Mumuni** to detonate.

Objection and Comment

Based upon counsel's extensive review of both the classified and non-classified evidence, there is no factual basis for the conclusions reached in paragraph 24. On this subject, counsel invites the court to review Fareed Mumuni's post-arrest statement, in which questions were posed to him on this subject. Mumuni's post-arrest statements, as memorialized in video, do not support the conclusion reached in paragraph 24.

5. **Fareed Mumuni objects to paragraph 29**

Fareed Mumuni objects to paragraph 29 for the same reasons as set forth above, in our objection to paragraph 21, Fareed Mumuni acknowledges that he lunged at a law enforcement officer with a large kitchen knife; however, he denies "repeatedly stabbing" anyone. Again, as set forth in our objection to paragraph 21, Fareed Mumuni asserts that upon lunging at the first agent, he was taken down and immediately subdued by the agents. Fareed Mumuni denies any allegation that he "repeatedly" stabbed anyone.

3

Furthermore, defense counsel do not believe that the facts and the circumstances of this case support the use of the first degree murder guideline.

**6.     Fareed Mumuni objects to paragraph 33**

Fareed Mumuni objects to paragraph 33 for the same reasons as set forth above, in our objections to paragraph 21 and 29. Fareed Mumuni acknowledges that he lunged at a law enforcement officer with a large kitchen knife; however, he objects to the account of what happened next. Fareed Mumuni, armed with a kitchen knife, encountered law enforcement agents wearing tactical gear with body armor, and carrying assault rifles. Fareed Mumuni asserts that upon lunging at the first agent, he was taken down and immediately subdued by the agents. Fareed Mumuni denies any allegation that "[a]s the officers attempted to restrain **Mumuni**, **Mumuni** repeatedly attempted to plunge the kitchen knife into the torso of an FBI special agent and reached out with his hand in the vicinity of a rifle used by another member of law enforcement."

**7.     Fareed Mumuni objects to paragraph 34**

As set forth above, in our objections to paragraphs 14 and 15, the information set forth in paragraph 34 lacks sufficient indicia of reliability to support the conclusion that "**Mumuni** was directly involved in the planning to carry out terrorist attacks." We therefore object to this conclusion based upon the information known to counsel.

<u>Request for a *Fatico* Hearing</u>

In light of the foregoing, as well as issues raised by the government's sentencing submission, it appears to defense counsel that this case is headed for an extensive *Fatico* hearing, because without sworn testimony, the court would be unable to decide several contested material issues of fact, which are in dispute in this case. Therefore, defense counsel requests an evidentiary hearing in relation to sentencing pursuant to U.S.S.G. § 6A1.3(b) and *United States v. Fatico,* 579 F.2d 707 (2d Cir. 1978).

Respectfully,

*Anthony L. Ricco*

Anthony L. Ricco

cc:   A.U.S.A. Alexander A. Solomon (By E.C.F.)
       A.U.S.A. Douglas M. Pravda (By E.C.F.)
       A.U.S.A. Ian C. Richardson (By E.C.F.)
       U.S.P.O. Angelica Deniz (By E-Mail)

4