UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

        - against -                                       Docket No. 15 Cr. 393 (MKB)

FAREED MUMUNI,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SUPPLEMENTAL SENTENCING MEMORANDUM FOR FAREED MUMUNI
(In Reply To Government's Sentencing Submission)

                                                                 *Attorney for Fareed Mumuni*

                                                                  *Anthony L. Ricco*
                                                                  ANTHONY L. RICCO, ESQ.
                                                                  20 Vesey Street, Suite 400
                                                                  New York, New York 10007
                                                                  (212) 791-3919
                                                                  *Tonyricco@aol.com*

Steven Z. Legon, Esq.
Kenneth J. Montgomery, Esq.
Of Counsel and on the Supplemental Reply

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

      - against -                                    Docket No. 15 Cr. 393 (MKB)

FAREED MUMUNI,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

This Supplemental Sentencing Memorandum is submitted pursuant to Rule 32 (f)(1) and (2) of the Federal Rules of Criminal Procedure, in reply to the government's supplemental sentencing submission.

## I. Preliminary Note

Fareed Mumuni has repeatedly stated that he never agreed to join or participate in any plan to attack the United States or harm any citizens of our nation by use of a pressure cooker bomb device. The government asserts that Fareed Mumuni's statements are "*meritless,*" and that there is, in fact, sufficient evidence to support its view that Fareed Mumuni agreed to join such an attack. While the government has produced plenty of direct and circumstantial evidence that Munther Omar Saleh discussed and actually pursued a plan to use a pressure cooker bomb device in a domestic attack,[1] there is no such evidence that Fareed Mumuni either (1) agreed, or (2) participated in any way in the planning or the carrying out of such an idea. In this case, there is no sufficiently reliable proof, other than conjecture, that Fareed Mumuni ever agreed to participate and/or actually participated in a plot to use

---

[1] This information included evidence that Munther Omar Saleh accessed internet sites for the construction and use of pressure cooker bombing devices, emails, the seizure of items from his home for the construction of such a device, along with Saleh's own post-arrest admissions. See, *The Saleh Complaint*, paragraphs 16 through 29; *The Mumuni Complaint*, paragraphs 8 and 9.

a pressure cooker bomb device against any United States citizen in a domestic attack, or in any other way.

In the absence of any such evidence, and in the face of Fareed Mumuni's specific and categorical denials, the government has resorted to the manipulation of words and the outright fabrication of facts (by joining disconnected sentences from his interview with allegations from the Saleh Complaint) to reach self-serving conclusions, in order to justify the imposition of a guideline sentence of 1200 months of imprisonment.

First, Fareed Mumuni has always admitted and acknowledged that Munther Omar Saleh discussed with him his (Saleh's) interests and ideas of using a pressure cooker bomb device. This is an controverted fact. However, at no time did Fareed Mumuni agree with Munther Omar Saleh, or any other person, to participate in a plot to harm United States citizens by use of a pressure cooker bomb device. Notwithstanding the government's transparent manipulation of words to support its desperate and misguided attempt to assign criminal liability, an independent review of the evidence in this case, by the court, will demonstrate and support the conclusion that Fareed Mumni did not join in agreement with Munther Omar Saleh's idea to engage in a pressure cooker bomb attack (as stated by Munther Omar Saleh) against the United States and/or to harm United States citizens; and that his denials are far from meritless. That they are, in fact, credible and consistent with the evidence gathered and seized by law enforcement during the course of the investigation.

Fareed Mumuni Did Not Agree To Participate In a Domestic Bombing Attack

In order to support its position, the government has misrepresented the chronology and significance of the events related to its claim that Fareed Mumuni agreed to participate with Munther

Omar Saleh's idea to engage in a pressure cooker bomb attack.[2]

Contrary to the completely uncorroborated statement set forth in the PSR, and the public statements made by the government prosecutors at various stages of the court proceedings, Fareed Mumuni never agreed to join or participate in any plan to attack the United States or harm any citizens of our nation. The government states that Fareed Mumuni's claim is "*meritless.*" To the contrary, Fareed Mumuni's truthful statements are support by all of the evidence in this case, viewed separately and in combination.

The Complaint Filed In The Mumuni Case

The Complaint filed in this case states: "*The investigation has uncovered that MUMUNI made efforts to participate in or support a terrorist attack in the New York metropolitan area or elsewhere on behalf of ISIL.*"[3] To reach this conclusion, the government apparently relied upon conjecture derived from a judicially intercepted telephone conversation on June 15, 2015, between Munther Omar Saleh and co-conspirator identified as CC-1, and other activity engaged in by Munther Omar Saleh. See, *The Mumuni Complaint*, paragraph 8, page 4 and paragraph 13, page 5.

To properly prepare for sentencing, defense counsel requested a meeting and did, in fact, meet with government prosecutors to obtain the basis of the allegations in the complaint and the statements made by the government during the plea allocution, to wit: that Fareed Mumuni participated in a

---

[2] In his sentencing submission, Fareed Mumuni made clear that he objected to the self-serving conclusions and conjecture set forth in paragraphs 14 and 15 of the Presentence Investigation Report "*that **Mumuni** may have been involved in Saleh's planning for a terrorist attack.*" See, Defense Objections To The Presentence Investigation Report, dated January 28, 2018, paragraph 7, at page 4.

[3] Paragraph 3 of the Complaint states: "*The investigation has uncovered that MUMUNI made efforts to participate in or support a terrorist attack in the New York metropolitan area or elsewhere on behalf of ISIL.*" When defense counsel met with the government to obtain the basis of the statements made during the plea allocution - - that Fareed Mumuni participated in a domestic terrorist attack, the government was unable provide any such information. Ultimately, the complaint acknowledges and corroborates this lack of evidence, when it states that the conversation Saleh had with a CCI, recorded on a judicial wiretap, merely "*suggests that MUMUNI may have been involved in Saleh's planning for a terrorist attack.*"

domestic terrorist attack. The government did not provide any additional information at the time of the meeting. This failure to provide such corroborative evidence to support the prejudicial, self-serving claim that Fareed Mumuni agreed to participate in a domestic bombing attack, is entirely consistent with the ultimate conclusion in the complaint; that the conversation Saleh had with a CC-1, recorded on a judicial wiretap, merely "*suggests that MUMUNI may have been involved in Saleh's planning for a terrorist attack.*" *Fareed Mumuni's Complaint*, paragraph 13, page 5. The government has converted "*may have been involved*" into a definitive established fact, without any direct or circumstantial evidence to support this self-serving conclusion.

Post-Arrest Videotaped Interview of Fareed Mumuni

On June 17, 2015, just moments after lunging at law enforcement officers, Fareed Mumuni was given his *Miranda* warnings, at which time he agreed to waive his 6th Amendment right counsel and his 5th Amendment right against self incrimination, and voluntarily agreed to a post-arrest interview with law enforcement. This lengthy, interview was memorialized in a videotaped recording which the defense provided to the court for review.[4]

In response to specific questions during the course of his extensive post arrest interrogation, Fareed Mumuni acknowledged that Munther Omar Saleh talked about the use of a pressure cooker bomb as a weapon of attack. However, Fareed Mumuni made it absolutely clear that the pressure cooker bomb attack was an act Munther Omar Saleh wanted to do. See, Time location on the video, 9:33:55 to 9:34:28. Fareed Mumuni repeatedly and consistently informed his interrogators, that although he listened to Munther Omar Saleh's remarks and ideas about a pressure cooker bomb, that he (Fareed Mumuni) never agreed to join Saleh or to assist him (or anyone else) in any kind of attack using such

---

[4] In connection with sentencing, Fareed Mumuni provided the court with a video recording of the post arrest interview and interrogation of Fareed Mumuni, along with a chart which summarizes the post-arrest interview and interrogation (as recorded), wherein Fareed Mumuni responds to specific questions.

a device.[5]

Throughout the interview, Fareed Mumuni responded to specific questions about (1) Munther Omar Saleh's intention to make and use a pressure cooker bomb; (2) whether anyone ever requested, at any time, that Fareed Mumuni engage in any attacks against the United States and/or harm any of its citizens; and (3) whether he was aware of any such attacks against the United States and/or harm any of its citizens. See, Summary Chart, time location (1) 9:23:50; (2) 9:24.20 to 9:24.24; (3) 9:29:00 to 9:30:09; (4) 9:31.49 to 9:30:09; (5) 9:31:49 to 9:32:15; (6) 9:31:16 to 9:33:18; (7) 9:33:55 to 9:34:28; (8) 9:35:30; (9) 9:35:42 to 9:36:10; (10) 10:07:20 to 10:08:10; (11) 10:40:20 to 10:51:28; (12) 10:57:30 to 10:59:00.

In response to Fareed Mumuni's steadfast credible denial, and out of desperation to support the imposition of a an unconscionable guidelines sentence, the government has completely misrepresented the statements actually made by Fareed Mumuni during his post arrest interview. The government states, in quotation marks "*sufficient evidence to demonstrate Mumuni's involvement in such a conspiracy.*" However, to reach that self-serving conclusion, the government utilizes a ploy which simply cuts and pastes totally disconnected post-arrest statements made by Munther Omar Saleh and Fareed Mumuni.

This tactic, employed by the government, is the precise reason why the defense submitted the videotaped interview to the court. So the court may watch the interview, and observe and listen to Fareed Mumuni during the full course of the interview, to determine for itself what Fareed Mumuni's actual statements were in response to the questions posed by the agents. The defense asserts that Fareed Mumuni's statements are truthful; reflect an effort to provide law enforcement with information to help protect United States citizen's from harm; and are credible and supported by of the other

---

[5] There was never any plan or agreement for Fareed Mumuni to participate in a pressure cooker bomb attack - - only a conversation with Saleh, which did not go further or result in any action, whatsoever, or agreement thereto, by Fareed Mumuni. Defense counsel has provided a copy of the full video interview/ interrogation to the court, so that the court may view the interview in its entirety, and listen to and observe Fareed Mumuni's statements in the context in which they were made, in order to draw an accurate conclusion based upon a totality of the evidence.

evidence obtained in this case.

Internet Searches For Bombing Building Materials

It is significant that contrary to the actions taken by Munther Omar Saleh and CC-1, Fareed Mumni did not ever search the internet for information or materials needed for the construction of a pressure cooker bomb. See, *Fareed Mumuni's Complaint*, paragraph 8, page 4; *Cf.*, *Munther Omar Saleh's Complaint*, paragraph 18, pages 9. Contrary to the actions taken by Munther Omar Saleh, Fareed Mumuni did not search the internet for "*notable New York City landmarks and tourists attractions*." See, *The Mumuni Complaint*, paragraph 8, page 4. Nor did Fareed Mumuni tweet support and praise for domestic attacks against United States citizens which took place in Garland, Texas in May 2015 or anywhere else for that matter. See, *Munther Omar Saleh's Complaint*, paragraph 8, pages 5 & 6.

Judicially Authorized Telephone Interceptions

In preparation of sentencing, defense counsel has previously requested that the government provide the court with any judicially intercepted telephone conversations (or the transcripts) which support a finding that Fareed Mumuni agreed to participate, or participated in the planing of a domestic bombing attack, as stated in the complaint and/or during the plea allocution. Other than a conversation between Munther Omar Saleh and CC-1, which concludes that "**Mumuni** *may have been involved in Saleh's planning for a terrorist attack,*" there are no other intercepted telephone calls from any source which provide sufficient evidence to support a conclusion that Fareed Mumuni agreed to participate, and/or participated in such an attack.

Execution of Search Warrants and Searches of Fareed Mumuni's Use of The Internet

On June 17, 2015, law enforcement conducted a search of Fareed Mumuni's Staten Island residence and the automobile that agents observed him using during the course of the investigation. The search of Fareed Mumuni's home and automobile did not result in the discovery of any bomb making materials or pamphlets, or guidelines for constructing bombs (pressure cooker or otherwise).

Other than a kitchen knife seized from the trunk of the Fareed Mumuni's vehicle after a search of his home and automobile, the agents did not uncover any documents, information, literature, ingredients, plans, manuals or materials for the planning or execution of a domestic attack in the United States, or to do harm to American citizens. The search of the automobile and family home, was entirely consistent with the truthful statements made by Fareed Mumuni during his lengthy and engaging interrogation. From this complete lack of information, the government has made unsupported and uncorroborated conclusions to the contrary.

In addition, unlike Munther Omar Saleh, Fareed Mumuni provided law enforcement with the names of all his social media accounts, along with the passwords to enter these accounts. See, *Summary Chart,* time location (1) 9:57:25 thru 10:02:14; and (2) 10:36:40. Again, unlike Saleh or CC-1, a review of Fareed Mumuni's internet searches and emails reveal that (1) he did not go to any internet web sites which provided information on the construction and/or use pressure cooker bombs; (2) he did not view Amazon advertisements for bomb making materials as did CC-1; (3) he did not view Youtube videos demonstrating the construction of and/or use of pressure cooker bombs for domestic or international attacks; (4) he did not download materials on bomb construction and usage; and (5) he did not receive or send any emails indicating his agreement or willingness to participation to participate in a domestic bombing attack of any kind. Despite the absence of the foregoing, the government proclaims there is "*sufficient evidence to demonstrate Mumuni's involvement in such a conspiracy*," a conspiracy to participate in a domestic bombing attack. Other than the cut and paste stunt, there is no evidence in this case that Fareed Mumuni ever agreed to participate in a domestic bombing attack using a pressure cooker bomb.

Munther Omar Saleh's statements, which reveal what he, Munther Omar Saleh, wanted to do, or actually to action to do, or that he wanted Fareed Mumuni to do, do not provide a basis, *aliunde*, to conclude that Fareed Mumuni agreed with Munther Omar Saleh that such action should be taken, or that Fareed Mumuni agreed to participate in such actions.

7

In this case, Fareed Mumuni, a first time offender and college student with an impressive academic and employment history, has taken responsibility for his conduct which led to his arrest in this case, as well as his relationship with Munther Omar Saleh. Fareed Mumuni responded truthfully to the agents' urgent inquiry about whether Fareed Mumuni had participated in any planned action to attack the United States or harm its citizens, and/or whether he was aware of any such plan by any individuals.[6] Fareed Mumuni denied that he participated in such plans, and stated that he had no knowledge of any person who was involved in the planning of such an attack. The government claims that Fareed Mumuni's statements are meritless, but instead that its own unsupported conjecture provides the basis for the court to impose a 1200 months sentence.

For the reasons set forth above, it is requested that the court impose a sentence at variance with the Guidelines pursuant to 18 U.S.C. §3553(a). It is clear to counsel, for all the reasons set forth herein, and in his Sentencing Recommendation, that Fareed Mumuni is a person who is capable of redemption, and deserving of leniency in this case.

Dated: New York, New York
April 25, 2018

Respectfully submitted for *Fareed Mumuni,*

*Anthony L. Ricco*
Anthony L. Ricco, Esq.

Steven Z. Legon, Esq.
Kenneth J. Montgomery, Esq.
Of Counsel and on the Supplemental Sentencing Reply

---

[6] Fareed Mumuni informed the agents that "*no person ever gave me any guidance (information) or advice to do anything in the United States.*" (9:23:53) Fareed Mumuni repeatedly informed the agents that the only thing he agreed with Munther Omar Saleh, was that he (Fareed Mumuni) wanted to travel to the Islamic State, and that he intended to fight back and defend himself if law enforcement tried to prevent him from doing so. Fareed Mumuni explained that there was no plan other than to fight back if he was stopped; and he agreed with the agents that "that was what he did" earlier that morning (during the law enforcement search of his family home). Fareed Mumuni denied that he agreed to use a pressure cooker bomb against law enforcement officer. (9:24:50) and see pages 26 and 27 of the Government's Transcript of the Video Interview.

8