PETER W. HALL, *Circuit Judge*, concurring in part and dissenting in part:

"We set aside a district court's sentence as substantively unreasonable *only* if affirming it would damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (quotation marks and ellipsis omitted) (emphasis added). As an initial matter, I do not believe the seventeen-year sentence is shockingly low and, therefore, I must dissent in part.

In reviewing a sentence for substantive reasonableness, we "take into account the totality of the circumstances." *Gall v. United States*, 552 U.S. 38, 51 (2007). I concur in the majority's opinion insofar as it provides the District Court the opportunity to clarify, if possible, and further explicate in detail why, after having heard Mumuni's sworn allocution and thereafter having accepted Mumuni's guilty plea, it second-guessed whether Mumuni intended to kill a federal officer. *See* Majority Op., *ante* at 21–28. If the District Court cannot do so, then I agree with the majority that the District Court must accept the facts as admitted under oath by Mumuni and sentence him with these facts in mind.

That said, I respectfully dissent from those parts of the majority's decision discussing what the majority identifies as the second and third errors that render Mumuni's sentence substantively unreasonable. *See* Majority Op., *ante* at 29–35. I acknowledge that reasonable judges can differ in their respective assessments of this

38

CERTIFIED COPY ISSUED ON 12/27/2019

record, and I consider each of the three of us to be reasonable. From my perspective, given the deferential standard of review we must apply, I disagree that this case requires imposition of a different sentence if, upon studied consideration of all factors that are and will become applicable at the time of resentencing, the District Court determines that a sentence similar to the present one is appropriate.

As the majority notes, this Court has not decided whether an unpreserved challenge to the substantive reasonableness of a sentence is reviewed under the standard of plain error or of abuse of discretion. *United States v. Thavaraja*, 740 F.3d 253, 259 n.4 (2d Cir. 2014). I would not find error under even the less stringent standard. "The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of questions of fact." *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008). For a finding of fact to be clearly erroneous, we must be "left with the definite and firm conviction that a mistake has been committed." *United States v. Cuevas*, 496 F.3d 256, 267 (2d Cir. 2007) (quoting *United States v. Hazut*, 140 F.3d 187, 190 (2d Cir. 1998)). We set aside a district court's sentence as substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

I for one do not think this is one of those exceptional cases. In my view the District Court considered Mumuni as an individual and carefully compared his conduct to that of his co-defendant Munther

39

Saleh. Those sentencing determinations were well within the sound discretion of the District Court. There is no doubt that this is a difficult case, but I fear the majority would prefer to substitute its sentencing preference for that of the District Court.

**I. Comparative Leniency of Mumuni's Sentence**

Affording appropriate deference to the District Court, I cannot conclude that it imposed a disproportionately lenient sentence on Mumuni compared to his co-defendant Saleh. The District Court's statements at sentencing show that it carefully compared the nature of Mumuni's offense conduct to Saleh's. The court "considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated." *Gall*, 552 U.S. at 55–56. Saleh, who received an 18-year aggregate sentence, was older than Mumuni and was the person who radicalized Mumuni and who played a more significant role in the parties' conspiracy and attempt to provide support to ISIS.[70] The court gave Mumuni a shorter sentence than Saleh for the first and second counts because it distinguished Mumuni's plot of a defensive course of action (a contingent confrontation with law enforcement if they impeded his travels to join the fight in the Middle East) from Saleh's plan (an unprovoked

---

[70] The court did not find credible the government's contention that Mumuni conspired with Saleh to build and detonate a pressure-cooker bomb. This is an area in which we owe the District Court deference given the ambiguities in the record.

affirmative attack in this country), a distinction that is not unreasonable.

In addition, the District Court expressly considered the seriousness of Mumuni's attack on the federal officer. The court stated that, of the crimes Mumuni committed, it believed the attempted murder of a federal officer was the most serious and sentenced Mumuni to 204 months in custody on that count. This concurrent sentence amounted to an additional 84 months over and above the terms of imprisonment imposed on Mumuni's other charges. The court believed that additional 84 months for attempted murder was sufficient and not greater than necessary to comply with the purposes of sentencing. Based on the record and affording appropriate deference to the District Court, I cannot say the court abused its discretion much less plainly erred.

**II. The Mitigating Factors**

Finally, in my view the majority opinion improperly curtails the discretion afforded to district courts in evaluating mitigating evidence when sentencing. "[S]entencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence [sic] and that highly relevant—if not essential—to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper v. United States*, 562 U.S. 476, 480 (2011) (quoting *Williams v. New York,* 337 U.S. 241, 246–247 (1949)) (internal quotation marks and brackets omitted). This discretion is based on

"longstanding principles of federal sentencing law and Congress' express directives in [18 U.S.C.] §§ 3661 and 3553(a)." *Id.* Section 3661 states, "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." § 3661 (emphasis added); *see also Pepper*, 562 U.S. at 488–89 (noting that the Sentencing Commission expressly preserved this discretion in the Guidelines).

Here, the District Court considered Mumuni's young age and lack of criminal record, letters from Mumuni's family and friends that "describe a very different Mumuni than the one who was arrested that morning," and Mumuni's discipline-free record during his almost three-year incarceration. Gov. App. 216–17. The court balanced this individualized view of Mumuni against his "conduct [that was] grave, reprehensible, and . . . deserv[ing] [of] serious punishment." Gov. App. 216. This was, and continues to be, exactly the type of individualized consideration to which we owe deference.

I respectfully disagree with the majority's suggestion that the District Court should weigh mitigating factors differently in cases involving terrorism and serious offense conduct. *See* Majority Op., *ante* at 34. Even in capital crimes, the Supreme Court has noted that "the definition of crimes generally has not been thought automatically to dictate what should be the proper penalty." *Lockett v. Ohio*, 438 U.S. 586, 602 (1978). That is because criminal cases are sui generis. "It has been uniform and constant in the federal judicial

tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

Moreover, the mitigating factors highlighted in the majority opinion–age and lack of criminal history–are unquestionably relevant to the purposes of punishment. The purposes of punishment set out in 18 U.S.C. § 3553(a)(2), "are, broadly speaking, proportionality, deterrence, incapacitation, and rehabilitation." *Douglas*, 713 F.3d at 700; *see also* § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . . this section.").

The Supreme Court has repeatedly emphasized that significant gaps in characteristics like maturity and susceptibility to peer influence make "children . . . constitutionally different from adults for purposes of sentencing." *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (citing *Roper v. Simmons,* 543 U.S. 551, 569–570 (2005); and *Graham v. Florida,* 560 U.S. 48, 68 (2010)).

> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate

43

> themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

*Montgomery v. Louisiana*, 136 S. Ct. 718, 733 (2016) (quoting *Miller*, *Roper* and *Graham*) (internal quotation marks and citation omitted); *see also Gall*, 552 U.S. at 58 ("[I]t was not unreasonable for the District Judge to view [21-year-old] Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future."); *Johnson v. Texas*, 509 U.S. 350, 367 (1993) (finding, in the case of a 19-year-old convicted of murder, that "[t]here is no dispute that a defendant's youth is a relevant mitigating circumstance . . . . Our cases recognize that 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'" (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982))). In addition, a defendant's prior criminal history is an integral part of our sentencing scheme. *See, e.g.*, *Nichols v. United States*, 511 U.S. 738, 747 (1994). This is evidenced by state recidivism statutes and the criminal history component of the Sentencing Guidelines. *Id*.

\* \* \*

Accordingly, I vote to **REMAND** to the District Court, and notwithstanding the majority's instruction that no substantially mitigating weight can be borne by Mumuni's behavior in prison, I would emphasize that at resentencing the District Court also has

"wide discretion in the sources and types of evidence used to assist [it] in determining the kind and extent of punishment to be imposed," *Pepper*, 562 U.S. at 488, including "evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the . . . Federal Sentencing Guidelines range." *Id*. at 481. It should not be out of the realm of possibility for the District Court to determine, after fully analyzing all the applicable factors including those for which we have ordered remand and Mumuni's behaviors and course of conduct subsequent to his April 2018 sentencing, that the appropriate punishment to be imposed is a term of incarceration similar to that imposed twenty months ago. Should either party be dissatisfied with the new sentence, of course, that party has the right to appeal.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

45