

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RMT:AAS/DMP/ICR
F. #2015R00096

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 4, 2020

By ECF

The Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>     Re:   United States v. Fareed Mumuni
>           Criminal Docket No. 15-393 (MKB)

Dear Judge Brodie:

The government respectfully submits this supplemental letter regarding resentencing of the defendant Fareed Mumuni, following remand from the United States Court of Appeals for the Second Circuit.  See United States v. Mumuni, 946 F.3d 97 (2d Cir. 2019).

As the district court previously found, and as the Second Circuit noted in its opinion, the advisory Sentencing Guidelines term is life imprisonment, based on a total offense level of 43 and a criminal history category of VI, but because a term of life imprisonment exceeded the statutory maximum sentence applicable to Mumuni's crimes, the statutory maximum of 85 years'—1,020 months'—imprisonment is the restricted Guidelines sentence. See Mumuni, 946 F.3d at 104; see also Sentencing Transcript, dated April 26, 2018, Doc. No. 161, at 7-8.  For the reasons set forth below, the government respectfully submits that application of the factors under 18 U.S.C. § 3553(a) counsel in favor of imposition of that statutory maximum sentence and advisory Guidelines sentence of 85 years' or 1,020 months' imprisonment.[1]

---

[1] The government incorporates by reference its prior sentencing submissions dated January 12, 2018 (Doc. No. 134) and April 19, 2018 (Doc. No. 155), as well as the victim statement provided by Special Agent Kevin Coughlin during the sentencing hearing on April 26, 2018 (Sentencing Transcript, Doc. No. 161, at 21-27).

I.  The Section 3553(a) Factors

Among the factors enumerated in 18 U.S.C. § 3553(a) are the nature and circumstances of the offense (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense (§ 3553(a)(2)(A)); the need for the sentence to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)); and the need to protect the public from further crimes of the defendant (§ 3553(a)(2)(C)). In Mumuni, the Second Circuit directed this Court upon resentencing to "accord substantially greater weight" to these specific four factors. Mumuni, 946 F.3d at 114. Application of "substantially greater weight" to these four factors underscores the appropriateness of a statutory maximum sentence.

A.  The Nature and Circumstances of the Offense

The conduct in this case is gravely serious and manifests a multifaceted approach to providing material support to ISIS.

Most notably, the defendant carried out a knife attack that nearly caused the death of FBI Special Agent Kevin Coughlin, an attack that "was indisputably a premeditated, willful, and deliberate attempt to murder a federal officer in the name of ISIS." Id. at 110.

As the Second Circuit noted, Mumuni conspired to "conduct a domestic terrorist attack against law enforcement officers" by planning "to attack law enforcement were they to ever approach him or prevent him from traveling to Syria." Id. at 102. Mumuni asked for and received "advance authorization from Junaid Hussain, a Syria-based ISIS operative" to conduct a suicide attack against law enforcement. Id. at 102, 105. Then, Mumuni carried out that attack when FBI agents went to his home to execute a search warrant. Id. at 103. Mumuni retrieved an eight-inch kitchen knife from his bedroom, concealed the knife behind his back, charged at Agent Coughlin and began stabbing Agent Coughlin. Id. at 103-04. Mumuni did so with "the specific intent to kill Agent Coughlin." Id. at 110. Agent Coughlin's life was spared when he was shielded from Mumuni's repeated stabs by the metal magazine carrier in Agent Coughlin's armored SWAT vest. Id. at 104. After being unable to harm Agent Coughlin during the struggle, Mumuni "attempted to reach for the trigger of another agent's M4 carbine assault rifle," before being subdued. Id.

As the Second Circuit held, "Mumuni's attack was not a spontaneous assault of a federal officer amid a heated altercation. Nor was it an act of self-defense. Mumuni's violent attack against Agent Coughlin was indisputably a premeditated, willful, and deliberate attempt to murder a federal officer in the name of ISIS. In short, it was a pre-authorized ISIS terrorist attack on American soil." Id. at 110.

The nature and circumstances of Mumuni's offense went far beyond just the attack on Special Agent Coughlin, however. As the Second Circuit described, "Mumuni's offense conduct begins with his considerable efforts to provide material support to ISIS." Id. at 102. Specifically, Mumuni helped facilitate the travel of at least one other coconspirator,

Nader Saadeh, to Syria through Jordan in order join ISIS. Mumuni himself also made preparations to travel to join ISIS to fight on behalf of the organization. See id. at 102 ("Mumuni also made plans to personally travel to Syria to join ISIS and wage jihad. Mumuni admitted that he and [Munther] Saleh had been working to raise money for their travels to join ISIS, and that he had begun researching flights from New York to Turkey.").

      B.      The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide a Just Punishment for the Offense

The exceptionally serious nature of Mumuni's conduct warrants the statutory maximum sentence in order to reflect its seriousness and to promote respect for the law and provide just punishment for the offense. Any of Mumuni's actions in support of a deadly terrorist organization such as ISIS—the attempted murder of a law enforcement officer in a "pre-authorized ISIS terrorist attack on American soil," Mumuni's own efforts to travel to Syria to join ISIS, and Mumuni's efforts to facilitate the travel of other foreign fighters— would individually warrant serious punishment; taken together, the defendant's conduct requires imposition of the statutory maximum.

Indeed, referring to the attack on Agent Coughlin, the Second Circuit focused on the "heinous nature of this offense—including its terrorist design," id. at 110, as warranting "substantially greater weight" at sentencing. The fact that the defendant's attack on Special Agent Coughlin itself did not result in death is not a mitigating factor. "[W]hen it comes to sentencing terrorism, Congress and the United States Sentencing Commission 'plainly intended for the punishment of crimes of terrorism to be significantly enhanced without regard to whether, due to events beyond the defendant's control, *the defendant's conduct failed to achieve its intended deadly consequences*.'" Id. at 113 (emphasis added) (quoting United States v. Stewart, 590 F.3d 93, 175 (2d Cir. 2009) (Walker, J. concurring in part and dissenting in part)). As the Second Circuit instructed, "in determining what constitutes a 'sufficient' sentence for a terrorist defendant whose conduct did not result in death or physical injury, a sentence at the high end of the applicable range may be plainly reasonable if supported by the balance of the § 3553(a) factors." Id. at 113.

      C.      The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

In this case, both general and individual deterrence support imposition of the statutory maximum sentence. As the Second Circuit has repeatedly noted, terrorism is a crime with high recidivism rates, and rehabilitation is notoriously difficult. See, e.g., id. at 112-13 (citing United States v. Meskini, 319 F.3d 88, 92 (2d Cir. 2003)). In Meskini, the Second Circuit held that "Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time." Meskini, 319 F.3d at 92. The sentence imposed should strongly discourage individuals from conducting attacks on law enforcement on behalf of a foreign terrorist organization and from traveling to join or helping to facilitate the travel of other foreign fighters to join such organizations.

The Guidelines themselves show that the imposition of a statutory maximum sentence (i.e., the effective Guidelines sentence) would be appropriate for individual deterrence purposes, by enhancing the defendant's offense level by 12 levels for a crime of terrorism and by placing the defendant in criminal history category VI. As the Second Circuit explained in Meskini, "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." 319 F.3d at 92.

      D.      The Need to Protect the Public from Further Crimes of the Defendant

In light of seriousness of the conduct, the need to protect the public from further crimes of the defendant is substantial. Taking action at the direction of an ISIS attack facilitator, the defendant came extremely close to killing Special Agent Coughlin and, during the attack, "attempted to reach for the trigger of another agent's M4 carbine assault rifle." Mumuni, 946 F.3d at 104.

It is hard to conceive of a case with a greater need to protect public safety from further crimes of the defendant. The defendant's participation in a premeditated knife attack on Special Agent Coughlin and attempt to take the lives of other agents by reaching for an agent's assault rifle should the defendant's disregard for human life. Innocent lives would surely have been lost as a result of the defendant's conduct, but for the actions of law enforcement.

As reflected in the sentences imposed for other Junaid Hussain-directed defendants cited in the government's January 12, 2018 sentencing submission (Doc. No. 134 at 22-23), other courts have found it appropriate and necessary to impose substantial sentences, including one life sentence, in order to reflect the seriousness of the criminal conduct and the threat to public safety. A statutory maximum sentence would ensure that Mumuni does not similarly threaten law enforcement or the public in the future.

II.     Conclusion

The government respectfully submits that the Court should sentence the defendant to the statutory maximum sentence of 85 years, which is also the effective advisory Guidelines sentence, in light of the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need for the sentence imposed to afford adequate deterrence to criminal conduct; and the need to protect the public from further crimes of the defendant.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/ Alexander A. Solomon
Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of the Court (MKB) (by ECF)
Anthony Ricco, Esq. (by ECF)