

U.S. Department of Justice

United States Attorney
Eastern District of New York

DMP:AAS/ICR  
F. #2015R00096

271 Cadman Plaza East  
Brooklyn, New York 11201

June 4, 2021

By ECF

The Honorable Margo K. Brodie  
Chief United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Fareed Mumuni  
             Criminal Docket No. 15-393 (MKB)

Dear Chief Judge Brodie:

      The government respectfully submits this response to defendant Fareed Mumuni's March 9, 2020 and February 16, 2021 resentencing submissions. Mumuni requests imposition of a non-Guidelines sentence on the following grounds: (1) he asks the Court to assign substantial weight to the same factors deemed mitigating at the original sentencing hearing, notwithstanding the Second Circuit's directions to the contrary in <u>United States v. Mumuni</u>, 946 F.3d 97 (2d Cir. 2019); and (2) he argues that pre-sentencing conditions of confinement at the Bureau of Prisons ("BOP") warrant leniency, in light of the COVID-19 pandemic. As detailed below, both arguments lack merit. Mumuni is scheduled to be re-sentenced on Tuesday, June 29, 2021 at 11 a.m.

    I.    <u>A Guidelines Sentence Is Appropriate</u>

      Pointing to the "tremendous amount of information" offered to and considered by the Court at sentencing, (Mar. 9 Mem. at 3), Mumuni contends that the Second Circuit's finding that the Court "drastically discounted the seriousness of Mumuni's conduct based upon a sterilized and revisionist interpretation of the record," 946 F.3d at 106, does not represent "an accurate narrative of . . . Mumuni's background, character and role in the offense," (Mar. 9 Mem. at 2). Against this backdrop, Mumuni urges the Court to assign substantial weight to the very same factors that the Second Circuit found unable to sustain controlling weight at the original sentencing hearing. The Court should reject Mumuni's extraordinary contention that the Second Circuit's instructions are erroneous.

      Despite Mumuni's suggestions to the contrary, the Second Circuit did not forbid the Court from considering Mumuni's background as a mitigating factor, including

"letters of support from family members that 'describe a very different Mumuni than the one who was arrested that morning.'" 946 F.3d at 112 (citing the Court's comments at sentencing). What the Second Circuit specifically found improper was the considerable weight afforded to various factors—such as Mumuni's young age at the time of the offense, his lack of prior criminal record, and his lack of disciplinary infractions while incarcerated—that "cannot bear the weight assigned to them by the District Court" to justify an "80% downward departure from the Guidelines range." Id. at 111-12.

Recently, the Seventh Circuit similarly vacated the sentence of a terrorism defendant, where the district court had imposed a below-Guidelines sentence of 16 years while the Guidelines had recommended life imprisonment. In United States v. Daoud, 980 F.3d 581 (7th Cir. 2020), the Seventh Circuit found that the factors of "age, mental health, and general awkwardness and impressionability" could not sustain the weight assigned to them by the district court. As here, the defendant in Daoud was relatively young:

> He was 19 when he solicited the FBI agent's murder and 21 when he tried to stab a fellow inmate to death. In other words, he was college aged at all relevant times. He may have been immature, but . . . he was old enough to know what he was doing.

Id. at 594-95. As also relevant here, the Seventh Circuit also considered—and rejected—the notion that the sentencing court should consider as a mitigating factor the defendant's acceptance of responsibility, as evidenced by his voluntary post-arrest statement. (See Mar. 9 Mem. at 8-10). The Seventh Circuit found that the defendant's acceptance of responsibility "would have limited relevance in mitigation" and was "not weighty enough to justify the extent of the downward departure," noting that acceptance of responsibility "normally factors into the advisory Guidelines calculation if a defendant pleads guilty." 980 F.3d at 596. So too here the Court should assign minimal mitigating weight, if any, to the defendant's age and participation in a post-arrest interview.

Similarly, Mumuni's "request[] that this court reject [the Second Circuit's] direction and consider Fareed Mumuni's post offense rehabilitation" is based on a distortion of the Second Circuit's reasoning. (Mar. 9 Mem. at 15). The Second Circuit did not misconstrue—as Mumuni suggests it did—Supreme Court precedent holding that sentencing courts should consider post-sentencing rehabilitation, among other facts. See Pepper v. United States, 562 U.S. 476, 481 (2011). Rather, the Second Circuit articulated the straightforward proposition that "no substantially mitigating weight can be borne here by the fact that Mumuni did what was plainly required of him—that is, behaving himself in prison." 946 F.3d at 112; see id. at 114 ("A defendant's legally-required compliance with institutional regulations during his term of pre-trial and post-sentencing detention is not a substantially mitigating factor for purposes of sentencing."). In other words, the Second Circuit did not direct the Court to ignore post-arrest rehabilitation, but rather instructed that Mumuni's compliance with prison rules is of minimal mitigating value. See also Daoud, 980 F.3d at 596 ("A defendant's good behavior in court has minimal value in mitigation.").

2

Finally, Mumuni misconstrues the Second Circuit's criticism that the Court failed to adequately assess the seriousness of the offense. The Second Circuit did not—despite Mumuni's arguments to the contrary—suggest that the Court "ignore[d] the fact that Fareed Mumuni participated in a serious act of violence." (Mar. 9 Mem. at 11). Rather, the Second Circuit instructed that the Court should not, on the one hand, rely on the fact that Mumuni attempted to murder law enforcement as a mitigating factor in the sentencing of co-defendant Munther Omar Saleh (who did not physically participate in the attempted murder of Special Agent Coughlin), but then, on the other hand, ignore that fact in imposing a lower sentence for Mumuni than for Saleh. 946 F.3d at 111. Similarly, the Second Circuit directed the Court to make factual findings consistent with Mumuni's plea allocution. Id. at 109-10. As the Court had "downplay[ed] the significance of Mumuni's assault," the Second Circuit found error in imposition of "a sentence that does not reflect Mumuni's more serious conduct." Id. at 110-11; see United States v. Khan, -- F.3d --, No. 20-20030, 2021 WL 1811755, at *4 (5th Cir. May 7, 2021) (vacating sentence of terrorism defendant where district court "sought to minimize Khan's actions, ignoring if not contradicting the facts to which Khan and the government had agreed and which formed the basis of his plea"). In this context, the Second Circuit directed the Court to give "significant weight" on remand to the seriousness of Mumuni's offense. 946 F.3d at 111.

II.     COVID-19

The government disagrees that conditions of confinement during the COVID-19 pandemic should be afforded mitigating weight, where Mumuni does not suffer from comorbidities, appears to have contracted and recovered from COVID-19 in or about December 2020 without displaying serious symptoms, and is now fully inoculated with the Pfizer vaccine.[1] Mumuni is therefore unlikely to be reinfected and is at minimal risk of serious illness if he is reinfected. Indeed, the Center for Disease Control ("CDC") now reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." CDC, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 4, 2021); see also United States v. Borelli, No. 84-CR-63 (LAP), 2021 WL 2228075, at *3 (S.D.N.Y. June 2, 2021) (discussing effectiveness of Pfizer vaccine at preventing severe illness). In sum, where Mumuni has produced no evidence suggesting that the BOP has failed to meet his medical needs or that conditions of confinement have posed or continue to pose a significant health threat, conditions of confinement should not serve as a basis for a departure from the applicable Guidelines range—much less a departure of the magnitude that was initially granted by the Court and found erroneous on appeal. See, e.g., United States v. McKay, 1:18-cr-00339-PAC-7, 2021 WL 807108, at **4-5 (S.D.N.Y. Mar. 3, 2021); United States v. Sanchez, 16-CR-500 (RMB), 2021 WL 2156225, at *4 (S.D.N.Y. May 27, 2021); United States v. Frame, No. 13-CR-271 (LTS), 2021 WL 1338822, at *3 (S.D.N.Y. Apr. 8, 2021) ("With fellow

---

[1] Copies of the defendant's BOP medical records are provided hereto as an attachment but will not be filed publicly on ECF.

inmates now being vaccinated, [defendant's] risk of reinfection is diminishing." (citation and alterations omitted)).

III.     Conclusion

As articulated above and in previous sentencing submissions, the government respectfully submits that the Court should sentence the defendant to the statutory maximum sentence of 85 years, in light of the factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By:     /s/ Alexander A. Solomon
Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (MKB) (by ECF)
       Anthony Ricco, Esq. (by ECF)